*In re* NO NAME
Third District   No. 3—87—0206

Opinion filed September 23, 1987.

HEIPLE, J., dissenting.

Michael M. Conway, of Hopkins & Sutter, of Chicago (William Carlisle Herbert, of counsel), for appellant.

Neil F. Hartigan, Attorney General, of Springfield and Tony L. Brasel, State's Attorney, of Watseka (Mark L. Rotert and Nathan P. Maddox, Assistant Attorneys General, and John X. Breslin, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOMBACHER delivered the opinion of the court:
This case involves an appeal from orders entered in a juvenile proceeding pending in the circuit court which: (1) prohibited appellant-respondent, The Daily Journal (hereinafter Journal), from publishing the name of a juvenile who was charged in connection with a fatal shooting, and (2) banned the Journal from the courtroom during future hearings in the proceedings unless it agreed to comply with the

above-stated order. During the course of challenging these orders in the circuit court, the Journal notified the Attorney General of the State of Illinois, pursuant to Supreme Court Rule 19 (107 Ill. 2d R. 19), of a challenge to the constitutionality of section 1—20(6) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—20(6)). Thereafter, the Attorney General entered his appearance in the case pursuant to Rule 19 for the limited purpose of defending the constitutionality of the statute in question.

On the evening of January 19, 1987, Jo McCord, a reporter for The Daily Journal of Kankakee, Illinois, attended a Watseka city council meeting, where she discussed a fatal shooting with the police chief of Watseka. A juvenile had been arrested in connection with the shooting, which had occurred two days earlier. The police chief used the name of the juvenile in discussing the matter with McCord and the boy's identity appeared to McCord to be common knowledge among city council members that evening.

On January 20, 1987, the juvenile was taken before the trial court to be charged in connection with the fatal shooting. McCord did not attend the hearing, mistakenly believing that the courtroom was closed to the press. During and after the hearing, she spoke with a probation officer about the boy's family life and about what happened at the hearing. During the conversation the probation officer referred to the boy by his name.

On January 21, 1987, the Journal published McCord's report of the juvenile hearing the previous day, which included the name of the juvenile. On January 28, 1987, McCord attended a second hearing in the juvenile proceedings. At the start of this hearing, the trial court orally ordered the reporters for the news agencies present not to use the name of the juvenile in their reporting of the proceedings held that day.

On January 29, 1987, the Journal published an article on the proceedings which took place on January 28, 1987. The article included the name of the juvenile and reported that the juvenile would be placed in the custody of a juvenile probation officer and would continue to be housed at the Du Page County Youth Home in Wheaton.

On February 11, 1987, the trial court *sua sponte* entered a second order which banned the Journal from the juvenile proceedings unless it agreed to comply with the orders of the court. In support of the order, the trial court cited section 1—20(6) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701—20(6)).

The Journal then moved to vacate the trial court's orders of February 11, 1987, and January 28, 1987. At the March 26, 1987, hearing

on the Journal's motion to vacate, the trial judge stated that he entered the January 28, 1987, order because he was concerned about threats which had been made against the juvenile. The trial judge also stated that he entered the February 11, 1987, order as an alternative to a contempt proceeding.

The Illinois Attorney General entered an appearance at the March 26 hearing and argued that section 1—20(6) is a narrowly tailored statute that serves a compelling State interest. At the conclusion of the hearing the trial court held that section 1—20(6) was not unconstitutional on its face and that the application of the statute in its prior orders was not unconstitutional. The trial court denied the Journal's motion to vacate and allowed its prior order in the matter to stand as the order of the court. On March 30, 1987, the Journal filed its notice of appeal from the trial court's orders.

On appeal, the Journal raises two issues: (1) whether the trial court's orders are unconstitutional because they violated the first amendment right of the Journal to publish information that had already entered the public domain; and (2) whether section 1—20(6) is unconstitutional on its face and as applied by the trial court. Prior to oral argument, the State filed motions to dismiss the Journal's appeal for want of jurisdiction and for failure to file a complete record on appeal. These motions were taken with the appeal. We will first address the preliminary issue of the standing of the Journal to bring this appeal and the jurisdiction of this court to hear the appeal raised by the State's motion to dismiss for want of jurisdiction.

The State argues that this court is without jurisdiction to entertain the instant appeal under Supreme Court Rule 307(a)(1) because this is not an injunctive action in any way, shape, or form. (107 Ill. 2d R. 307(a)(1).) The State argues that the trial court's order to the press not to use the name of the minor in reporting on the court hearing of January 28, 1987, was strictly administrative in nature and designed to protect the physical safety of the minor.

The Journal argues that the State's argument is inconsistent with the holding in *In re M.B.* (1985), 137 Ill. App. 3d 992, 484 N.E.2d 1154. The Journal contends that the trial court's order of January 28, 1987, was not administrative in nature, but instead was entered out of a concern that the juvenile might suffer irreparable injury from the publication of his name, and it therefore was based on considerations that historically gave equity courts power to issue injunctions. The Journal argues that the trial court's order was in substance an injunction and as such was appealable under Rule 307(a)(1). Further, the Journal claims that because the January 28, 1987, order was unlawful,

the February 11, 1987, order, which enforces the earlier order by imposing sanctions, is also unlawful.

■ Supreme Court Rule 307(a)(1) provides in relevant part that an appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (107 Ill. 2d R. 307(a)(1).) The purpose of Rule 307(a)(1) is to permit, as a matter of right, interlocutory review of the exercise of a court's equitable power to grant the type of coercive injunctive relief formerly available in courts of equity jurisdiction. (*JFS v. ABMJ* (1983), 120 Ill. App. 3d 261, 458 N.E.2d 76.) Whether an order is properly characterized as an injunction within the provisions of Rule 307(a)(1) is determined by its substance rather than its form. *Lake Shore Racquet Club, Inc. v. Fireman's Fund Insurance Cos.*(1980), 91 Ill. App. 3d 1118, 415 N.E.2d 625.

In *JFS* the court held that a trial court's order, impounding court records and prohibiting the parties from making them public, did not represent an exercise of a court's equitable jurisdiction to grant injunctive relief as contemplated by Rule 307(a)(1). The court characterized the order as a ministerial act deriving from the inherent authority of the court to control the proceedings and its own records. *JFS v. ABMJ* (1983), 120 Ill. App. 3d 261, 263, 458 N.E.2d 76, 79.

■ After a careful review of the orders of January 28, 1987, and February 11, 1987, we conclude that the substance of the orders did not involve the exercise of court's equitable discretion to grant injunctive relief. Instead, we find that the orders were administrative in nature and derived from the inherent authority of the court to control the proceedings. The orders were completely ancillary to the proceeding taking place under the Juvenile Court Act. The order was an attempt to protect the safety of one of the parties in the proceedings.

We are aware that the court in *In re M.B.* (1985), 137 Ill. App. 3d 992, 484 N.E.2d 1154, decided this very issue differently. It found that a protective order issued against a newspaper was in essence an injunction and therefore appealable under Supreme Court Rule 307(a)(1) (107 Ill. 2d R. 307(a)(1)). However, we respectfully decline to follow that decision. Due to our disposition of this issue we not need address the merits of the appeal.

Accordingly, we dismiss the present appeal for lack of jurisdiction.

Appeal dismissed.

BARRY, P.J., concurs.

JUSTICE HEIPLE, dissenting:

I disagree that this court is without jurisdiction to entertain the instant appeal pursuant to Supreme Court Rule 307(a)(1). Rule 307(a)(1) provides in relevant part that an appeal may be taken from an interlocutory order "granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." The purpose of the rule is to permit the interlocutory review of a court's equitable discretion to prevent its abuse. Whether an order is properly characterized as an injunction subject to interlocutory review is determined by its substance rather than its form. (*Bohn Aluminum & Brass Co. v. Barker* (1973), 55 Ill. 2d 177.) An injunction has been defined as follows:

> "[A] judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights." *JFS v. ABMJ* (1983), 120 Ill. App. 3d 261, 262, citing *Wangelin v. Goe* (1869), 50 Ill. 459, 463.

The circuit court's order of January 28, 1987, can be viewed as nothing less than injunctive in nature. It operated as a restraint upon the Journal in the exercise of its first amendment rights. When the Journal disregarded the order, the circuit court entered a second order banning the Journal from future hearings in the proceedings. The judge stated that the second order was entered as an alternative to contempt proceedings. The order of January 28, 1987, restricting the Journal's rights, and the second order effectively holding the Journal in contempt of court should be viewed as being subject to interlocutory review. Such was the ruling of the Fourth District under similar factual circumstances in *In re M.B.* (1985), 137 Ill. App. 3d 992, which the majority chooses to disregard, and the First District in *American Re-Insurance Co. v. MGIC Investment Corp.* (1979), 73 Ill. App. 3d 316.

The orders of the circuit court went beyond the court's administrative power to control the proceedings and protect a party before the court. If a danger to the juvenile existed, reasonable means could have been found to protect him without infringing upon the first amendment right of the Journal to publish truthful information that had previously entered the public domain. *Oklahoma Publishing Co. v. District Court* (1977), 430 U.S. 308, 51 L. Ed. 2d 355, 97 S. Ct. 1045.

In *Oklahoma Publishing*, the Supreme Court considered the constitutionality of an order enjoining members of the news media from publishing the name of an 11-year-old child, despite the fact that the name had already been publicly disclosed. The Supreme Court held

that the order was unconstitutional and that the first and fourteenth amendments would not permit a State court to prohibit the publication of information obtained at court proceedings which were open to the public. The court cited as precedent its decision in *Cox Broadcasting Corp. v. Cohn* (1975), 420 U.S. 469, 43 L. Ed. 2d 328, 95 S. Ct. 1029, where it held that a State could not impose sanctions on the publication of a name released to the public in official court records. Finally, the court noted that there was no evidence that the news media obtained the information unlawfully, or even without the State's implicit approval, where the name of the juvenile was publicly revealed in connection with the prosecution of the crime.

Similarly, in the instant case, the Journal did not learn the name of the juvenile unlawfully. Rather, it learned the name through the course of investigative reporting and through conversations with the chief of police, city council members, and the juvenile's probation officer. The name of the juvenile was used as if it was common knowledge. Thus, the name was publicly revealed in connection with the prosecution of the crime and the newspaper should not be banned from further publishing it. Yet, the circuit court prohibited the Journal from publishing the name and exercised contempt-like power when the Journal did publish it. The action of the court was not only injunctive in nature, but unconstitutional as well.