127 Ill.2d 247 (1989)
537 N.E.2d 292
In re A MINOR, Whose Name is Omitted (The People of the State of Illinois, Appellee,
v.
The Daily Journal of Kankakee, Appellant).
No. 66013.
Supreme Court of Illinois.
Opinion filed March 22, 1989.
*248 *249 *250 Michael M. Conway and Wm. Carlisle Herbert, of Hopkins & Sutter, of Chicago, for appellant.
Neil F. Hartigan, Attorney General, of Springfield, and Tony Brasel, State's Attorney, of Watseka (Shawn W. Denney, Solicitor General, Terence M. Madsen and Jack Donatelli, Assistant Attorneys General, of Chicago, and Kenneth R. Boyle and John X. Breslin, of the State's Attorneys Appellate Prosecutor, of Ottawa, of counsel), for the People.
Jon A. Duncan, of Mass, Miller & Josephson, Ltd., of Chicago, for amicus curiae Chicago Headline Club.
Appellate court judgment reversed; circuit court orders vacated.
JUSTICE CLARK delivered the opinion of the court:
The case poses the question of whether a newspaper which learns through ordinary reportorial techniques of the identity of a minor charged in a closed criminal proceeding may be forbidden from reporting that information once it has entered the public domain. We hold on the authority of Smith v. Daily Mail Publishing Co. (1979), 443 U.S. 97, 61 L.Ed.2d 399, 99 S.Ct. 2667, that  at least in the absence of a serious and imminent threat to the minor's welfare which cannot be obviated *251 by some other, less speech-restrictive means  such an order contravenes the Federal and Illinois Constitutions. The answer to the question, therefore, is no.
During the course of a juvenile proceeding in the circuit court of Iroquois County, the circuit court entered two orders: the first prohibiting appellant, The Daily Journal of Kankakee, from publishing the name of a minor, who had been charged in connection with a fatal shooting, and the second banning appellant from the courtroom during future hearings in the case unless it agreed to comply with the first order. During the course of challenging these orders in the circuit court, appellant notified the Attorney General of the State of Illinois, pursuant to Supreme Court Rule 19 (107 Ill.2d R. 19), of a challenge to the constitutionality of section 1-20(6) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701-20(6)). The Attorney General then entered his appearance in the case under Rule 19 for the limited purpose of defending the constitutionality of the Act. After the circuit court denied the appellant's motion to vacate the two orders, appellant appealed to the appellate court, pursuant to Rule 307(a)(1) (107 Ill.2d R. 307(a)(1)). (Rule 307(a)(1) provides for interlocutory appeal of orders relating to injunctive relief.) With one justice dissenting, the appellate court dismissed the appeal for lack of jurisdiction (160 Ill. App.3d 613), and we granted appellant's petition for leave to appeal (107 Ill.2d R. 315(a)).
On the evening of January 19, 1987, Jo McCord, a reporter for appellant, attended a Watseka city council meeting. While there, she talked with the police chief of Watseka about a fatal shooting which had taken place two days before. A minor had been arrested in connection with the shooting. McCord asked the police chief to tell her about family disputes which the police had been called to quell at the home where the killing occurred, *252 and in the course of answering McCord's questions, the police chief disclosed the minor's name. The minor's identity also appeared to McCord to be known to the city council members present that evening. In casual conversation, several council members discussed the minor's personality, and expressed surprise that he would be accused of violence.
The next day, January 20, 1987, the minor was taken before the trial court to be charged in connection with the shooting. Under the mistaken impression that the courtroom was closed to the press, McCord chose not to attend. During and immediately after the hearing, however, she spoke about the case with an Iroquois County juvenile probation officer, who told her what had happened at the hearing and about the minor's family life. In the course of the conversation the probation officer, like the police chief, freely used the minor's name.
On the following day, January 21, 1987, appellant published McCord's report of the hearing. The article included the minor's name. Appellant claims that its policy is to publish the names of minors who are charged with serious felonies, such as murder or attempted murder.
On January 28, 1987, McCord attended a second hearing in the juvenile proceedings. At the start of this hearing, the trial judge ordered the reporters present not to disclose the minor's name in their reporting of the proceedings held that day. The next day, however, January 29, 1987, appellant published a second article, reporting on the hearing and again publishing the minor's name. It also stated that the minor would be placed in the custody of a juvenile probation officer and would continue to be housed at the Du Page County Youth Home in Wheaton.
On February 11, 1987, the trial court sua sponte entered an order which banned appellant from the juvenile proceedings unless it agreed to comply with the orders *253 of the court. In support of its order, the trial court cited section 1-20(6) of the Juvenile Court Act (Ill. Rev. Stat. 1985, ch. 37, par. 701-20(6)). At a hearing held to vacate the January 28 and February 11 orders, the trial judge explained that he had entered the orders because of "certain threats * * * made toward the juvenile involved in this case" which had been "circulating in the community" and were "made known to the Court by more than just one individual, just by general knowledge and comment." The judge also alluded to his concern about releasing the minor's whereabouts. The trial judge "felt very strongly that this information could be known or be relayed to and be made known to any person or persons that might have any desire or willingness to commit harm against the minor." Because the minor was to be placed in foster care outside of the local community, "the fact that where the juvenile was going, if it was known to the people in that community or area that the juvenile was going to be in their midst, might unduly alarm the citizens of that area." Additionally, people in the local community who wished to harm the minor "would learn of his whereabouts" and would travel there "perhaps * * * and harm the minor." As to this last concern, the judge stated that "[h]ow serious a threat that would be, I suppose you could say your guess is as good as mine." The Attorney General appeared at the hearing to argue that section 1-20(6) is constitutional. The trial court denied the appellant's motion to vacate.
On March 30, 1987, appellant filed a notice of appeal from the court's orders. On the same day, the circuit court held a further hearing. At that hearing, McCord agreed to comply with the prior orders, pending the appeal, and the court ordered all persons present not to use or publish the name of the minor "from any proceedings arising in Court this date."
*254 While the appeal was pending in the appellate court, another hearing was held in the juvenile proceeding. At that hearing, on August 27, 1987, the court ordered all persons present "not to utilize the name of the minor in any reference to the minor, from any proceedings held here today, outside the courtroom." The next day appellant filed an emergency motion to vacate this order and a request for an immediate ruling in its appeal. The appellate court denied the motions. Appellant then published an article about the August 27 hearing that did not reveal the minor's name.
Shortly thereafter, the appellate court, with one justice dissenting, granted the State's motion to dismiss the appeal on the ground that the trial court's orders were merely "administrative," rather than "injunctive," and were not, therefore, appealable under Rule 307(a)(1). (160 Ill. App.3d at 616.) The dissenting justice stated that the orders were injunctive and, on the merits, that they were unconstitutional as "a restraint upon [the appellant] in the exercise of its first amendment rights." (160 Ill. App.3d at 617 (Heiple, J., dissenting).) Since the appellate court's decision, proceedings in the circuit court relating to the juvenile have apparently come to an end.
In this court the State puts forward three arguments in favor of affirmance and/or the dismissal of the appellant's appeal. The State first argues that since the juvenile proceedings have ended, this case is now moot. Next, the State argues that the trial judge's order is not appealable under Rule 307(a)(1) (107 Ill.2d R. 307(a)(1)). Finally, the State argues that the trial court's order is constitutional. The brief filed on behalf of the State by the State's Attorney for Iroquois County does not also argue that section 1-20(6) is constitutional, but instead argues that the court's orders were a proper exercise of "the inherent power of the circuit court." The brief filed *255 on behalf of the State by the Attorney General pursuant to Rule 19 argues that section 1-20(6) is constitutional. Although we decline to reach the question of the facial validity of section 1-20(6), we reject the remainder of the State's arguments, and find that the section, as applied here, violates appellant's rights of free speech and free press.
We first consider the State's argument that this case is now moot. A case on appeal becames moot where "the issues involved in the trial court no longer exist" because events occurring after the filing of the appeal render it impossible for the appellate court to grant the complaining party effectual relief. (La Salle National Bank v. City of Chicago (1954), 3 Ill.2d 375, 378-79, 380; see also In re Marriage of Landfield (1987), 118 Ill.2d 229, 232; Bluthardt v. Breslin (1979), 74 Ill.2d 246, 250; Madison Park Bank v. Zagel (1982), 91 Ill.2d 231, 235 (case is moot where judgment would be wholly ineffectual for lack of a subject matter on which it can operate).) The doctrine stems from the fear that parties to a dispute which for practical purposes has ceased to exist will lack the "`personal stake in the outcome of the controversy [which serves] to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult * * * questions.'" (People ex rel. Black v. Dukes (1983), 96 Ill.2d 273, 276-77, quoting Baker v. Carr (1962), 369 U.S. 186, 204, 7 L.Ed.2d 663, 678, 82 S.Ct. 691, 703.) The State argues that this case is now moot because the juvenile proceeding has now been concluded.
We do not agree. Insofar as appellant is concerned, it is still subject to the trial court's orders of February 11, 1987, and January 28, 1987. The order of January 28 forbade appellant to use the juvenile's name in any of its reporting on the proceedings held that day, while the order *256 of February 11 conditioned appellant's access to future hearings upon its willingness to refrain from using the minor's name. On March 30, McCord agreed to comply with the February 11 order and was therefore allowed to attend the August 26 hearing; but this agreement must be considered in the light of appellant's decision to file a notice of appeal on the same date. It is appellant's position that it should have been allowed to attend the hearing and publish the minor's name, and it has not published the minor's name since January 29, 1987. It apparently still wishes to publish the minor's name, even though the passage of time has obviously made the identity of the minor somewhat less newsworthy than before. If it publishes the minor's name, it will violate the February 11 order and may be held in contempt. The fact that appellant ultimately attended the August 26 hearing is therefore of no consequence.
Nor can it be contended that the trial court's orders have been withdrawn or are no longer in effect. So far as the record is concerned the trial judge first entered an order on January 28, renewed it on February 11, denied a motion to vacate it on March 26, assured himself of appellant's willingness to comply with it on March 30, and allowed appellant's reporter to attend the hearing on August 26 only after he had satisfied himself that appellant would not defy the order. We therefore cannot agree with the State that the trial court "effectively vacated" its orders by allowing appellant to attend the hearing on August 26. Moreover, we are unable to understand the State's contention that the "force and effect of the orders have lapsed" following the conclusion of the juvenile proceeding. The statute itself provides that "the court may * * * prohibit any person or agency present in court from further disclosing the minor's identity" (Ill. Rev. Stat. 1983, ch. 37, par. 701-20(6)) and *257 does not limit the effect of the court's order of prohibition to any specified time.
The heat of this controversy may have somewhat abated, but it is not yet stone cold. All the subject matters of the litigation  the appellant, the minor's identity, and the circuit court's orders  are still in existence. A judgment in appellant's favor will allow appellant to publish the minor's name and a judgment against appellant will prevent publication.
Even were we to agree with the State that the termination of the juvenile proceeding had rendered this case formally moot, we would still believe that it falls within any one of several exceptions to the mootness doctrine.
For example, a case which normally would be considered moot may qualify for review if it involves a question of great public interest. (People ex rel. Wallace v. Labrenz (1952), 411 Ill. 618, 622; see also People ex rel. Black v. Dukes (1983), 96 Ill.2d 273, 277.) The criteria for application of the public interest exception are: (1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will generally recur. (Labrenz, 411 Ill.2d at 622; Environmental Protection Agency v. Pollution Control Board (1980), 88 Ill. App.3d 71, 76.) This case falls within the public interest exception. The interests involved  the State's interest in the minor's physical safety, and appellant's interest in the publication of newsworthy information  are both of surpassing public concern. It is desirable that circuit court judges receive guidance as to the constitutionality of section 1-20(6), which may be applied in any juvenile proceeding. This question of the constitutionality of section 1-20(6) has arisen in the past (see In re M.B. (1985), 137 Ill. App.3d 992) and is almost certain to recur in the future.
*258 Similarly, this case, even if otherwise moot, involves an event of short duration which is "`capable of repetition, yet evading review.'" (Madison Park Bank v. Zagel (1982), 91 Ill.2d 231, 236, quoting Sosna v. Iowa (1975), 419 U.S. 393, 399-400, 42 L.Ed.2d 532, 540, 95 S.Ct. 553, 557.) To receive the benefit of this exception, the complaining party must demonstrate that: (1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again. (People v. Bailey (1983), 116 Ill. App.3d 259, 261-62, citing Gannett Co. v. DePasquale (1979), 443 U.S. 368, 377, 61 L.Ed.2d 608, 620, 99 S.Ct. 2898, 2904.) By asserting that the circuit court's orders will not survive the termination of the juvenile proceeding, the State itself has impliedly conceded that the challenged action is so short in duration that it will normally end before it can be fully litigated. In similar cases involving court-ordered restrictions on the reporting of judicial proceedings, the United States Supreme Court has regularly found the restrictions to be "capable of repetition, yet evading review." (See, e.g., Gannett Co., 443 U.S. at 377-78, 61 L.Ed.2d at 620, 99 S.Ct. at 2904 (lifting of order closing pretrial hearing to the press does not deprive Court of jurisdiction since underlying criminal proceeding will not normally last long enough to permit full appellate review); Globe Newspaper Co. v. Superior Court (1982), 457 U.S. 596, 602-03, 73 L.Ed.2d 248, 254-55, 102 S.Ct. 2613, 2617-18 (order excluding press and public during testimony of minor victim in a rape trial capable of repetition, yet evading review because criminal trials are typically of short duration).) Just as in these cases it was reasonably likely that the newspapers involved would again be subjected to the challenged restrictions in future criminal trials, so here it is reasonably likely that *259 appellant will be subjected to similar orders in the future when it again attempts to report the names of minors charged with serious crimes.
The State contends, however, that appellant must demonstrate a reasonable probability that a juvenile court judge will again enter an order to protect a minor's physical safety, rather than his reputation or future rehabilitation. It is the State's contention that such orders are relatively rare, "because it is unheard of for a minor's life to be threatened by anyone in the context of a juvenile proceeding." The State neglects to mention the case of In re M.B. (1985), 137 Ill. App.3d 992, in which a similar order was entered to protect a minor's physical safety. The State is also fudging the distinction between an actual threat to a minor's safety, which may indeed be rare, and a judicial assertion that such a threat exists, which may be more common. But in any case, we do not agree that appellant must demonstrate that the statute will in the future be applied in precisely the same circumstances or for precisely the same reasons. Such a requirement would mean that no case would ever be "capable of repetition," for the simple reason that the facts of a future case might be slightly different. It is sufficient that the same statutory provision will most likely be applied in future cases involving the same party.
Lastly, the State argues that appellant could have prevented the case from becoming moot by petitioning this court for a writ of mandamus. We agree that one of the functions of an extraordinary writ is to permit speedy appellate review in cases where the passage of time would otherwise render a case moot. But we cannot agree that the mere availability of the writ prevents appellant from pursuing the normal appellate process and claiming the benefit of exceptions to the mootness doctrine. The issuance of such a writ is discretionary (People *260 ex rel. Carey v. Scotillo (1981), 84 Ill.2d 170, 175) and might not be granted even in cases where the petitioner's underlying claim has merit. In fact the newspaper involved in the similar case of In re M.B did ask this court for a writ of prohibition, and was denied. (In re M.B., 137 Ill. App.3d at 995.) Requiring this time-consuming and uncertain remedy as a prerequisite to, or as a substitute for, an ordinary appeal would only add cases to this court's motion docket.
We therefore hold that this case is not moot. Similar considerations persuade us that the circuit court's order was the proper subject of an interlocutory appeal under Rule 307(a)(1), and that the appellate court erred by holding otherwise.
Supreme Court Rule 307(a)(1) provides that "[a]n appeal may be taken to the Appellate Court from an interlocutory order of court * * * granting, modifying, refusing, dissolving, or refusing to dissolve or modify an injunction." (107 Ill.2d R. 307(a)(1).) The question presented here is whether a court order preventing the publication of certain information constitutes an injunction.
To determine what constitutes an appealable injunctive order under Rule 307(a)(1) we look to the substance of the action, not its form. (Bohn Aluminum & Brass Co. v. Barker (1973), 55 Ill.2d 177, 180.) An apple calling itself an orange remains an apple. Actions of the circuit court having the force and effect of injunctions are still appealable even if called something else. Temporary restraining orders are reviewable (Bohn Aluminum, 55 Ill.2d at 178), and in Valente v. Maida (1960), 24 Ill. App.2d 144, 149, which we cited with approval in Bohn Aluminum, an order staying proceedings in a case pending the rendition of judgment in a related case was treated as a reviewable order, notwithstanding the fact that the order used the term "stay" rather than "injunction." Similar results have been reached with respect to *261 an order denying a motion for a stay of proceedings pending arbitration (School District No. 46 v. Del Bianco (1966), 68 Ill. App.2d 145; Applicolor, Inc. v. Surface Combustion Corp. (1966), 77 Ill. App.2d 260), and the denial of a motion to stay proceedings in one case until the conclusion of an appeal in a different case (Wiseman v. Law Research, Inc. (1971), 133 Ill. App.2d 790). While we express no opinion as to the merits of these appellate court cases, they do reflect a policy of broadly construing the meaning of the term "injunction."
Dictionary definitions of the term "injunction" also support the appellant's position. An injunction has been defined as a "prohibitive, equitable remedy issued or granted by a court at the suit of a party complainant, directed to a party defendant in the action, or to a party made a defendant for that purpose, forbidding the latter to do some act * * * which he is threatening or attempting to commit," or, more simply, as a "judicial process operating in personam and requiring [a] person to whom it is directed to do or refrain from doing a particular thing." (Black's Law Dictionary 705 (5th ed. 1983).) Our court has similarly described an injunction as "a judicial process, by which a party is required to do a particular thing, or to refrain from doing a particular thing, according to the exigency of the writ, the most common sort of which operate as a restraint upon the party in the exercise of his real or supposed rights." (Wangelin v. Goe (1869), 50 Ill. 459, 463.) The circuit court in this case ordered the appellant to refrain from "doing a particular thing"  from publishing the minor's name. The order operated as a restraint upon the appellant in the exercise of its first amendment rights, real or imagined.
The State argues, however, that the term "injunction" is to be defined by the traditions peculiar to equity jurisprudence and the historical powers of chancery courts. This argument is not without merit. Not every *262 nonfinal order of a court is appealable, even if it compels a party to do or not do a particular thing. Orders of the circuit court which can be properly characterized as "ministerial," or "administrative"  because they regulate only the procedural details of litigation before the court  cannot be the subject of an interlocutory appeal. (See People ex rel. Scott v. Silverstein (1981), 87 Ill.2d 167, 171 (stating that discovery orders and subpoenas are not appealable interlocutory orders).) Such orders may be considered noninjunctive because they did not form part of the power traditionally reserved to courts of equity, but, instead, were part of the inherent power possessed by any court to compel witnesses to appear before it and give testimony. (See JFS v. ABMJ (1983), 120 Ill. App.3d 261, 262.) They do not affect the relationship of the parties in their everyday activity apart from the litigation, and are therefore distinguishable from traditional forms of injunctive relief. While we thus agree with the State that such a category of administrative, noninjunctive orders exists, we do not agree that orders of the court forbidding the publication of information fall within that category.
Our conclusion is based on two considerations. First, it is by no means clear that orders to cease publication form part of the traditional "inherent" powers possessed by all courts. Second, and more importantly, we have already reviewed a similar restraint upon publication which was appealed pursuant to Rule 307(a)(1). In Kemner v. Monsanto Co. (1986), 112 Ill.2d 223, the trial judge issued an order prohibiting the defendant from discussing the facts of a pending action with the media until the conclusion of the trial. Pursuant to Rule 307(a)(1), the defendant appealed the order. (112 Ill.2d at 235.) Assuming, apparently, that the appellate court properly took jurisdiction of the appeal, we reached the merits of *263 the defendant's challenge to the order. 112 Ill.2d at 242-50.
The State argues that Kemner is distinguishable because the order in Kemner affected a party to the underlying proceeding; here, in contrast, the appellant was not directly involved in the juvenile proceeding which prompted the judge's order. We do not agree. "`To render a person amenable to an injunction it is not necessary that they should have been a party to the suit'" (O'Brien v. People ex rel. Kellogg Switchboard & Supply Co. (1905), 216 Ill. 354, 366, quoting J. High, Injunctions § 1444), and nonparties have often been the subject of injunctions (e.g., Bullard v. Bullard (1978), 66 Ill. App.3d 132, 134 (savings and loan association, not a party to the case, enjoined from distributing funds belonging to the respondent)). If anything, the appellant's status as a nonparty strengthens the need for interlocutory appellate review, since the appellant would never be subject to an appealable final judgment in the underlying juvenile action. Nor can we agree with the State's contention that the availability of mandamus, or other extraordinary writs, obviates the need for interlocutory review.
For the foregoing reasons, we hold that interlocutory restraints upon publication of information are reviewable as interlocutory injunctive orders under Rule 307(a)(1). To the extent that JFS v. ABMJ (1983), 120 Ill. App.3d 261, 262, conflicts with our holding here and in Kemner, that case is overruled. In JFS v. ABMJ, the court held that a provisional order of the trial court, impounding certain court records and prohibiting either party in an action from making public pleadings or other papers, was not an appealable interlocutory order.
Having cleared the procedural underbrush, we turn to the merits. The circuit court claimed to act under the authority granted to it by section 1-20(6) of the Juvenile Court Act, which provides:

*264 "The general public except the news media and the victim shall be excluded from any hearing and, except for the persons specified in this Section, only persons, including representatives of agencies and associations, who in the opinion of the court have a direct interest in the case or in the work of the court shall be admitted to the hearing. However, the court may, for the minor's protection and for good cause shown, prohibit any person or agency present in court from further disclosing the minor's identity. (Emphasis added.) (Ill. Rev. Stat. 1983, ch. 37, par. 701-20(6).)
Appellant challenges the circuit court's order as "abridging the freedom of speech, or of the press" (U.S. Const., amend. I) and violative of the principle that "[a]ll persons may speak, write, and publish freely, being responsible for the abuse of that liberty" (Ill. Const. 1970, art. I, § 4). The first amendment to the United States Constitution applies to the States through the due process clause of the fourteenth amendment (U.S. Const., amend. XIV). The appellant attacks the validity of the power granted the court in the last sentence of section 1-20(6) on its face and as applied in this instance. While we do not reach the question of whether an exercise of the power granted in section 1-20(6) would be unconstitutional in all instances, we believe that it is unconstitutional as applied here.
The appellant contends, and we agree, that the circuit court's order in this case constitutes a "prior restraint" upon speech. A prior restraint has been defined as a "predetermined judicial prohibition restraining specified expression." (Chicago Council of Lawyers v. Bauer (7th Cir.1985), 522 F.2d 242, 248.) While protection of free speech reaches beyond prior restraints (Landmark Communications, Inc. v. Virginia (1978), 435 U.S. 829, 56 L.Ed.2d 1, 98 S.Ct. 1535), a prior restraint upon publication is "the most serious and the least tolerable infringement *265 on First Amendment rights" (Nebraska Press Association v. Stuart (1976), 427 U.S. 539, 559, 49 L.Ed.2d 683, 697, 96 S.Ct. 2791, 2803). Prior restraints are particularly suspect when they prevent the timely disclosure of truthful information. Because a speaker's defiance of a judicial order can place the speaker in contempt even if his speech is ultimately held to be protected (Walker v. City of Birmingham (1967), 388 U.S. 307, 18 L.Ed.2d 1210, 87 S.Ct. 1824), a prior restraint freezes the flow of ideas during the course of litigation, and tends to deprive the public of timely news, information, and comment. In this case, for example, the appellant's decision to obey the court's order of February 11, 1987, meant that it could not receive, and never will receive, the full benefit of a timely publication of the minor's identity. At this late date, few readers will be interested.
For this reason, any prior restraint upon speech, while not unconstitutional per se, bears a heavy presumption against its validity. (Organization for a Better Austin v. Keefe (1971), 402 U.S. 415, 419, 29 L.Ed.2d 1, 5, 91 S.Ct. 1575, 1578.) In order to pass constitutional muster, the restraint must either contain certain specified procedural safeguards (see, e.g., Freedman v. Maryland (1965), 380 U.S. 51, 13 L.Ed.2d 649, 85 S.Ct. 734), not present here, or must fall within one of several narrowly defined exceptions to the doctrine (see Southeastern Promotions, Ltd. v. Conrad (1975), 420 U.S. 546, 555, 43 L.Ed.2d 448, 457, 95 S.Ct. 1239, 1245). In the context of pending judicial proceedings, a judicial order restraining speech will not be held invalid as a prior restraint if it is: (1) necessary to obviate a "serious and imminent" threat of impending harm, which (2) cannot adequately be addressed by other, less speech-restrictive means. (Cf. Nebraska Press Association v. Stuart (1976), 427 U.S. 539, 561, 49 L.Ed.2d 683, 699, *266 96 S.Ct. 2791, 2803-04; Kemner v. Monsanto Co. (1986), 112 Ill.2d 223, 243.) Or, as the distinguished Judge Learned Hand once put it, the question is whether "the gravity of the `evil,' discounted by its improbability, justifies such invasion of free speech as is necessary to avoid the danger." United States v. Dennis (2d Cir.1950), 183 F.2d 201, 212, aff'd (1951), 341 U.S. 494, 95 L. Ed 1137, 71 S.Ct. 857.
Our determination that this standard has not been met is largely controlled by two United States Supreme Court cases dealing with the disclosure of a minor's identity during the course of a criminal trial. In Oklahoma Publishing Co. v. District Court (1977), 430 U.S. 308, 51 L.Ed.2d 355, 97 S.Ct. 1045, a minor was charged at a detention hearing with murder. Under the applicable statute, the hearing should have been private unless the judge specifically ordered it to be public, but reporters were present and learned the minor's identity. Thereafter, newspapers, radio, and television reports freely disseminated the minor's name and/or photograph throughout the local area. Following this publicity the minor was arraigned at a closed hearing, pursuant to the statute, and the court issued an order which enjoined members of the news media from further publishing the minor's name and photograph in connection with the juvenile proceeding. The Court held that since the trial court's decision to allow reporters to attend the detention hearing had allowed the minor's identity to be "`publicly revealed in connection with the prosecution of the crime'" and to be "placed in the public domain" (430 U.S. at 311, 51 L.Ed.2d at 359, 97 S.Ct. at 1047), the court's order abridged the petitioner's freedom of speech despite the fact that subsequent hearings in the case were closed.
In Smith v. Daily Mail Publishing Co. (1979), 443 U.S. 97, 61 L.Ed.2d 399, 99 S.Ct. 2667, reporters *267 learned before the commencement of judicial proceedings of the name of a minor who had allegedly shot and killed one of his classmates. They discovered the name simply by asking various witnesses, the police, and an assistant prosecutor, who were all present at the scene. When the newspapers published the minor's name, they were indicted under a statute which prohibited newspaper publication of the name of a minor charged in a juvenile proceeding without prior judicial approval. Sidestepping the question of whether the judicial approval feature of the statute made it a prior restraint, the Court held that penalizing the publication of truthful information which had been discovered by "routine newspaper reporting techniques" offends the first amendment, especially since the State's asserted interest in the minor's rehabilitation and reputation was not sufficiently compelling to justify the ban and was not sufficiently furthered by a selective ban applying only to the print media. The Court stated:
"The sole interest advanced by the State to justify its criminal statute is to protect the anonymity of the juvenile offender. It is asserted that confidentiality will further his rehabilitation because publication of the name may encourage further antisocial conduct and also may cause the juvenile to lose future employment or suffer other consequences for this single offense. In Davis v. Alaska (1974), 415 U.S. 308, 39 L.Ed.2d 347, 94 S.Ct. 1105, similar arguments were advanced by the State to justify not permitting a criminal defendant to impeach a prosecution witness on the basis of his juvenile record. We said there that `[w]e do not and need not challenge the State's interest as a matter of its own policy in the administration of criminal justice to seek to preserve the anonymity of a juvenile offender.' [Citation.] However, we concluded that the State's policy must be subordinated to the defendant's Sixth Amendment right of confrontation. [Citation.] The important rights created by the First Amendment must be considered along with the rights of defendants guaranteed by the Sixth Amendment. [Citation.] *268 Therefore, the reasoning of Davis that the constitutional right must prevail over the state's interest in protecting juveniles applies with equal force here." (443 U.S. at 104, 61 L.Ed.2d at 405-06, 99 S.Ct. at 2671.)
Justice Rehnquist concurred in the judgment solely because of the statute's selective application to newspapers.
In this case also, the appellant's reporter also learned the name of the minor through lawful and "routine" newspaper reporting techniques. It therefore is difficult to argue that Smith can be distinguished. Whatever interest the State may legitimately assert in keeping the name of a minor secret, that interest is hardly compelling when the State itself, or its agents, have helped to disclose the minor's identity. Nor does the State's decision to hold closed hearings before and after revelation of the minor's identity change our analysis. This fact was also present in Oklahoma Publishing. Most, if not all, of the benefit which might be achieved by a prior restraint was lost when appellant, not yet subject to a court order, lawfully published the minor's name in connection with the juvenile proceeding and the underlying events.
Nor does the appellant's agreement not to publish the name in return for admission to the hearing change our analysis. Even assuming, without deciding, that this agreement did not violate the doctrine of unconstitutional conditions (see, e.g., Perry v. Sindermann (1972), 408 U.S. 593, 33 L.Ed.2d 570, 92 S.Ct. 2694) the first amendment strips the State of the power to proscribe the publication of information which has already been lawfully revealed and which has been obtained by lawful means.
The legitimate entry of the minor's name into the public domain thus robs the State of any argument that the court's order was "necessary" to protect the State's *269 interest, regardless of what that interest is. For this reason, we cannot agree with the State that the trial court's invocation of an interest in the minor's safety, rather than his reputation, serves to distinguish this case from Smith. In either case, the harm the State's action seeks to avert has largely been done. It serves no purpose to shut the barn door when the horse has already fled.
But even were we to concede that this infringement upon appellant's first amendment rights should yield to an interest in obviating a threat to the minor's physical well-being, we could not agree that the State has adequately demonstrated such a threat. The court's vague reference to "certain threats" which had been "circulating in the community" and which had been revealed by "general knowledge and comment" does not sufficiently demonstrate a serious and imminent threat of harm. Cf. Kemner v. Monsanto Co., 112 Ill.2d at 244, 245 ("gag order" requires "specific findings" of a serious and imminent threat supported by "substantial evidence," not merely a finding of a possibility of harm).
Since the minor had already been moved to a location outside the local community, the danger posed by the further publication of his name was exceedingly remote. To believe that such publication would place his life in danger requires the acceptance of an extremely tenuous chain of inference. We would have to believe: (1) that specific persons were planning to harm the minor, (2) that these persons had not previously learned the minor's name either through the rumors circulating in the community or through the appellant's initial report, and (3) that, once having learned the name through fresh reports, these individuals would travel outside the local community to carry out their plot. As to the likelihood of such a scenario, the trial judge himself conceded that "your guess is as good as mine." While we are sympathetic *270 to the trial court's anxiety, a finding of a serious and imminent threat of harm must rest on something more than guesswork.
We emphasize that our decision does not require the trial judge to wait until a lynch mob has placed a rope around a child's neck. But we are loath to conclude that a newspaper's interest in publishing truthful information must yield to a concern about a minor's safety based solely on such vague intimations of danger as were alleged here.
The State has also not shown that the minor could not be protected by other, less speech-restrictive means. Protective custody, for example, might keep the minor from harm without infringing upon appellant's first amendment rights.
For the foregoing reasons, we hold that part of section 1-20(6) of the Juvenile Court Act which gives the court the power to proscribe the publication of a minor's name in connection with a juvenile proceeding cannot be constitutionally applied where the publisher learns the identity of the minor not in a hearing closed to the public, but through routine, reportorial techniques, at least where a serious and imminent threat of harm to the minor's well-being has not been demonstrated by substantial evidence. We express no opinion as to the question of the statute's facial validity, or its application in other instances. The judgment of the appellate court is therefore reversed, and the challenged orders of the circuit court of Iroquois County are vacated.
Appellate court judgment reversed; circuit court orders vacated.
JUSTICE CALVO took no part in the consideration or decision of this case.