*In re* PATRICIA S. *et al.*, Minors, Appellants (The People of the State of Illinois, Petitioner-Appellee, v. Barbara L. *et al.*, Respondents).

First District (2nd Division)   No. 1—90—2098

Opinion filed November 26, 1991.

Patrick T. Murphy, Public Guardian, of Chicago (Michael G. Dsida and Kathleen G. Kennedy, of counsel), for appellants.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb and Susan S. Wigoda, Assistant State's Attorneys, of counsel), for the People.

JUSTICE DiVITO delivered the opinion of the court:

The State's Attorney, on behalf of the Illinois Department of Children and Family Services (DCFS), filed petitions for adjudication of wardship in the interest of the minors involved in this case on the basis of alleged neglect by their mother. Prior to ruling at two temporary custody proceedings, the circuit court declined to conduct a hearing to determine whether DCFS had made reasonable efforts to prevent or eliminate the need to remove the children from their home (Ill. Rev. Stat. 1989, ch. 37, par. 802—10(2)), stating its belief that such reasonable efforts findings need not be made before minors are taken from their parents' custody. The court then entered orders granting DCFS custody of the children without any indication that DCFS had made reasonable efforts to prevent or eliminate the need

to remove the minors from their home. The public guardian, who had been appointed attorney and guardian *ad litem* for the minors, agreed that it was in the best interest of the minors to remove them from their home but objected to the lack of a reasonable efforts hearing.[1] At the disposition hearing after a finding of neglect, the court found that DCFS had made reasonable efforts to reunite the family. The minors do not dispute the disposition order. Instead, they challenge the circuit court's refusal, at the temporary custody hearings, to determine whether DCFS had made reasonable efforts to keep the family intact. They assert that by not doing so, the court acted contrary to their best interests and violated State and Federal law. They ask that the temporary custody orders be reversed and that the matter be remanded so that the court may make the required determinations.

In January 1989, DCFS caused to be filed petitions for adjudication of wardship of Theresa and Harold Mitchell F. (then seven and six years old, respectively); Anthony E. (11 years old); and Patricia S. (10 years old). Each petition alleged parental neglect in not providing the care necessary for the minor's well-being and in having an environment injurious to the minor's welfare. At an *ex parte* hearing, the public guardian was appointed attorney and guardian *ad litem* for each child, and the court awarded DCFS temporary custody of each child. At a temporary custody hearing approximately five weeks later, the court vacated the earlier custody orders and entered an order of protection that provided for the mother's cooperation with DCFS, including drug counselling. None of these orders is appealed here.

Five months later, in July 1989, DCFS caused to be filed petitions for supplementary relief. These petitions alleged that the mother continued to use illegal drugs, consorted with other drug users, and had left one of the children with someone who forced the child to inhale paint thinner fumes, for which the child had to be taken to the hospital. The State asked that the court vacate the order of protection and that DCFS again be granted temporary custody. In addition, DCFS had caused to be filed a petition for adjudication of wardship in the interest of the mother's newborn child, Andrea L.

At the hearing on these petitions, the public guardian agreed to DCFS custody but stated that he could not stipulate that DCFS had made reasonable efforts to keep the family together. He then sug-

---

[1]The minors petitioned for leave to appeal the temporary custody orders, raising the issue addressed here, as allowed by Illinois Supreme Court Rule 306(a)(1)(v). This court denied the petition in an order dated January 30, 1990. (*In re Patricia S.* (1990), No. 1—89—2243.)

gested that the matter be set down for separate hearing. The court, however, replied, "I don't have to concern myself with reasonable efforts right now." Prior to its order awarding custody to DCFS, the court painstakingly questioned the mother to ascertain if she understood that the children would be taken temporarily from her. It did not query her, or anyone else, about DCFS efforts to prevent removal of the children even though the DCFS investigator and follow-up worker were present. The court then stated "[b]y agreement, finding of probable cause [to believe that Andrea was neglected], urgent and immediate necessity [that a temporary custodian be appointed for Andrea's protection]. Temporary custody without prejudice to [DCFS] with right to place." The court added "as to the other minors, by agreement, vacate the [February] protective order. By agreement, finding of urgent and immediate necessity, temporary custody without prejudice to [DCFS] with right to place." The written orders give no indication as to what efforts, if any, DCFS had made to prevent or eliminate the need to remove the minors from their home.

At the next temporary custody hearing approximately one month later, the mother and Anthony E.'s father agreed to let the temporary custody order stand with prejudice. The public guardian also agreed to let the earlier order stand, but he qualified his agreement by stating, "I will not be in agreement of reasonable efforts in this case," a sentiment also voiced by the public defender, who represented the mother. When the court replied, "I don't necessarily have to [make a reasonable efforts finding] until I have heard some evidence," the State's Attorney stated that the only required findings at that juncture were probable cause, urgent and immediate necessity, and services. The court then let stand with prejudice its July orders giving DCFS temporary custody of the children. The public guardian again voiced his objection to the court's decision to order temporary custody with DCFS without a reasonable efforts determination.

At an adjudication hearing in February 1990, the court found the children to be neglected minors. At the disposition hearing the following June, three witnesses testified: a staff member from Harold and Theresa F.'s placement; a DCFS staff member; and the mother. At no time during examination or argument did counsel for either the mother or the minors challenge the adequacy of DCFS efforts to prevent or eliminate the need to separate the minors from their mother. In closing argument, the public guardian acknowledged that the children's best interest would be served by making DCFS their guardian. The court then granted custody of each child to DCFS, expressly finding orally and in writing that "services [aimed at family preservation

and family reunification were] incomplete" and "reasonable efforts were made to prevent or eliminate the need for removal [of the minors from the home]."

# I

We first must address the State's contention that the circuit court's later disposition orders moot any appeal of the temporary custody orders and that the minors waived their right to appeal when they agreed that DCFS custody was in their best interest.

## A. MOOTNESS

■■ Even if we assume that the question raised here is moot, this court nevertheless may entertain this appeal because the mootness bar is not absolute. A court may consider moot issues if they concern "a question of great public interest" or if they are "capable of repetition, yet evading review." (*In re A Minor* (1989), 127 Ill. 2d 247, 257-58, 537 N.E.2d 292, 296.) Both exceptions apply here.

When deciding if a matter falls within the public interest exception, courts consider "(1) the public nature of the question, (2) the desirability of an authoritative determination for the purpose of guiding public officers, and (3) the likelihood that the question will generally recur." (*A Minor*, 127 Ill. 2d at 257, 537 N.E.2d at 296.) Under the fourteenth amendment, parents have a "fundamental liberty interest *** in the care, custody, and management of their child[ren,]" with which the government may not interfere unduly. (*Santosky v. Kramer* (1982), 455 U.S. 745, 753-54, 71 L. Ed. 2d 599, 606, 102 S. Ct. 1388, 1394-95.) The children have the concomitant right to remain with their parents. The issue this appeal presents is whether the circuit court, in declining to make the reasonable efforts determination before ordering removal of the children from their home, deprived the minors of their right to remain with their mother without complying with statutory due process safeguards. A matter of greater public concern is difficult to imagine. *In re B.S.* (1979), 73 Ill. App. 3d 507, 509, 392 N.E.2d 62, 63 (appellate court will consider moot issue from delinquency proceeding if it implicates due process issues but will dismiss for mere procedural error).

In addition, if the circuit court and the State's Attorney are mistaken in their belief that a court may order removal of children from their homes without hearing evidence on and making detailed determinations as to DCFS efforts to keep the family together, this court's ruling would help guide these public officials as to the prerequisites for a transfer of custody from a parent. Lastly, the question raised

here likely will recur: it arose twice for these minors, and the circuit court continues to have jurisdiction over the minors, who can ask for modification of the disposition order. Thus, the question here falls squarely within the public interest exception to the mootness bar.

Events that are "capable of repetition yet evading review" also present justiciable questions despite mootness. To qualify under this exception, the minors must demonstrate that "(1) the challenged action is in its duration too short to be fully litigated prior to its cessation and (2) there is a reasonable expectation that the same complaining party would be subjected to the same action again." (*A Minor*, 127 Ill. 2d at 258, 537 N.E.2d at 296.) Here, just as in *A Minor*, the State's assertion that the temporary custody orders are mooted by the neglect and disposition rulings "impliedly concedes" that the duration of the challenged orders precludes full litigation. (*A Minor*, 127 Ill. 2d at 258, 537 N.E.2d at 296.) Too, the trial court's refusal, on two separate occasions, to make the determination with regard to these minors demonstrates actual repetition, not merely "a reasonable expectation" thereof.

We conclude that both criteria of the mootness exception are satisfied. Thus, this court may consider the merits of the appeal.

### B. WAIVER

■ We must also determine whether the minors have waived the right to appeal the temporary custody orders by agreeing at each hearing that DCFS custody was in their best interest. Such agreement, if voluntary, warrants dismissal unless the error was fundamental and on the face of the record. 2 Ill. L. & Prac. *Appeal & Error* §76, at 176, §211 at 258-59 (1953).

We cannot view the public guardian's agreement to DCFS custody as voluntary. The public guardian, like the court, is required above all to act in the children's best interest. If, at the time of the hearings, that interest was served best by removing the children from their home, then the public guardian cannot be viewed as having voluntarily accepted the benefits of the custody and disposition orders. To ask the public guardian to contest the transfer of custody, which he believed to be in the minors' best interest, and thereby permit the children to remain at risk is to place him between Scylla and Charybdis. We decline to require the public guardian to make that choice. Moreover, the error appears on the face of the record and is, as explained below, fundamental. Thus, even if the public guardian's acceptance of the orders' benefits were voluntary, dismissal is not warranted. (2 Ill. L. & Prac. *Appeal & Error* §211, at 258-59 (1953).) Accordingly, we

find no waiver here. We note that, in any event, the State did not move for dismissal and, at oral argument, conceded that this court may reach the merits. 2 Ill. L. & Prac. *Appeal & Error* §589, at 532 (1953).

## II

The minors contend that the circuit court's refusal, at the temporary custody hearings, to require evidence of reasonable efforts to keep them with their mother was in dereliction of its obligation under section 2—10 of the Juvenile Court Act of 1987 (the Act) (Ill. Rev. Stat. 1989, ch. 37, par. 802—10(2)). They argue that the Act imposes an affirmative duty on the court to elicit this information and that the court was obliged to do so despite the minors' agreement at each hearing that it was in their best interest to remove them from their mother's custody. They maintain that the court's abdication of its statutory duty flouts the expressed policy of the Act that removal should be ordered "only when [a child's] welfare or safety or the protection of the public cannot be adequately safeguarded without removal." (Ill. Rev. Stat. 1989, ch. 37, par. 801—2(1).) Although there is no Illinois case law on this issue, the minors cite three out-of-State cases that construe similarly worded statutes along the lines they urge here: *In re A.L.W.* (Mo. Ct. App. 1989), 773 S.W.2d 129; *In re M.H.* (Iowa Ct. App. 1989), 444 N.W. 2d 110; and *In re Burns* (Del. 1986), 519 A. 2d 638.

The State responds that if omission of a reasonable efforts determination were error, it was harmless error because, in the State's view, no one was prejudiced at the temporary custody hearings in light of the minors' agreement to the orders, and the reasonable efforts finding at the disposition hearing corrected the error. The State distinguishes the three cases cited by the minors in that no reasonable efforts finding was made at any time in two of the cases and the third case concerned Federal law and its relation to termination of parental rights, not State law on temporary custody.

■ We find the State's argument unpersuasive. The Act gives the court broad powers "fully to gather information bearing upon the current condition and future welfare of persons subject to th[e] Act." (Ill. Rev. Stat. 1989, ch. 37, par. 801—2(2).) For temporary custody hearings, section 2—10 of the Act describes with particularity the specific questions that must be asked, the order in which to ask them, and who is responsible for supplying the information:

"If the court finds that there is probable cause to believe that the minor is *** neglected[, witnesses] shall be examined be-

fore the court. *** *The Court shall require documentation* by representatives of the [DCFS] as to the reasonable efforts that were made to prevent or eliminate the necessity of removal of the minor from his or her home, and *shall consider the testimony* of any person as to those reasonable efforts. If the court finds that it is a *matter of immediate and urgent necessity* [that the minor be removed] *and further finds that reasonable efforts have been made or good cause has been shown* why reasonable efforts cannot prevent or eliminate the necessity of removal of the minor from his or her home, the court may [order removal.] *** In making its [reasonable efforts determinations], the court shall state in writing its findings concerning the nature of the services that were offered or the efforts that were made to prevent removal of the child and the apparent reasons that such services or efforts could not prevent the need for removal." (Emphasis added.) Ill. Rev. Stat. 1989, ch. 37, par. 802—10(2).

The wording of this statute is unequivocal: in a temporary custody hearing, a court must make three determinations before ordering removal of a child from parental custody: (1) whether probable cause exists to believe that the minor is neglected; (2) if so, whether removal is a matter of immediate and urgent necessity for the child's welfare; and (3) if so, whether DCFS has made reasonable efforts to prevent or eliminate removal of the child, or whether there is a good reason for not doing so. Under the statute, unlike its customary role in civil or criminal proceedings, the court cannot sit passively and await the parties' presentation of evidence. Instead, the Act requires that it must act affirmatively, and perhaps at times aggressively, to ferret out information before it can decide that a child's interest is better served by removal from the family.

Here, the trial court was correct in stating that it had to hear evidence prior to making a reasonable efforts determination and that this determination was necessary only if it first made probable cause and urgent-and-immediate-necessity findings. The court went astray, however, in believing that it could enter an order granting DCFS custody without first making a reasonable efforts determination. Having neglected to gather this information, the court erred under the plain language of the Act by abdicating its duty (1) to require that DCFS present evidence either of its efforts to keep the family intact or of good cause for the absence of such efforts, (2) to examine family members, DCFS staff, and others for other relevant testimony, and

(3) to make detailed findings as to the existence and adequacy of DCFS efforts.

This error, moreover, was not harmless, contrary to the State's assertions here. The State's analysis ignores the fact that the error appears on the face of the record and constitutes a deprivation of the minors' constitutional right to due process. The question before the circuit court at each temporary custody hearing is whether DCFS has made reasonable efforts to keep the family together as of the time of *that* hearing. The purpose of each determination is not merely to provide evidence of the need to transfer custody, but to determine if unification can be achieved with DCFS help in the form of additional or different services at the time of the hearing. Hence, the reasonable efforts determination at the disposition hearing cannot cure the effect of the absence of a determination at the earlier hearings for the simple reason that the disposition hearing resolves a different question.

The State's claim that no prejudice resulted is similarly without foundation for, as the minors note, by not hearing evidence as to what efforts, if any, DCFS was making to keep the family together at the time of each hearing, the court could not ascertain whether an order to DCFS to alter, augment, or begin such efforts would obviate the need to separate the children from their mother, or, if removal was necessary, whether changes in DCFS services and strategy could result in a prompt reunion. For example, had the court ordered DCFS in July to provide help in finding better housing or different drug counselling services, the children might have been able to return to their mother. Hence, the court's error prejudiced both the minors and the mother while simultaneously thwarting the intent of the Act to unify families. Such error cannot be deemed harmless.

We recognize that the juvenile court caseload is staggering. We also understand the circuit court's conduct here in light of the parties' consensus that the challenged orders were in the best interest of the children. Nevertheless, the size of the court's docket and the agreement of the agencies cannot justify ignoring a clear statutory requirement.

Despite our conclusions, we do not remand because we agree with the State that a ruling now on whether, at the time of the temporary custody hearings, DCFS was making reasonable efforts to keep the minors with their mother would be pointless. No one here challenges the determination that was made at the disposition hearing or the disposition ruling itself. As noted above, reasonable efforts determinations are time specific: they address the adequacy of DCFS efforts only as of the time of the ruling. A finding now concerning reasonable

efforts at the temporary custody stage would have no effect on the minors. Accordingly, having emphasized the necessity of the court making timely reasonable efforts findings in future cases, we affirm the judgment of the circuit court.

Judgment affirmed.

HARTMAN and McCORMICK, JJ., concur.