602 N.E.2d 480 (1991)
234 Ill. App.3d 1010
176 Ill.Dec. 826
In re A.F., a Minor, Respondent-Appellant (The People of the State of Illinois, Petitioner-Appellee; Helen and Roy F., Respondents-Appellees).
No. 1-90-2318.
Appellate Court of Illinois, First District, Second Division.
October 22, 1991.
Patrick T. Murphy, Office of the Cook County Public Guardian, Chicago (Therese Schafer, of counsel), for respondent-appellant.
Jack O'Malley, State's Atty., County of Cook, Chicago (Renee Goldfarb, Kenneth T. McCurry, of counsel), for petitioner-appellee.
Randolph N. Stone, Public Defender of Cook County, Chicago (Joseph M. Gump and Robert Guch, of counsel), for respondents-appellees.
*481 Justice DiVITO delivered the opinion of the court:
The circuit court of Cook County denied the motions of the State and the Illinois Department of Children and Family Services (DCFS) to vacate the guardianship of A.F., a minor, terminate wardship, and close the case. A.F.'s motion to direct the State to file a petition for adjudication of wardship also was denied. In this appeal, he contends that the circuit court erroneously denied his motion. For reasons that follow, we agree.
On September 19, 1989, DCFS filed a petition for adjudication of wardship for A.F. in the juvenile division of the circuit court of Cook County. The petition was based on section 2-3(1) of the Juvenile Court Act (Ill.Rev.Stat.1989, ch. 37, par. 802-3(1)), alleging that A.F. was a neglected minor because his parents failed to provide the care necessary for his well-being. Following an initial hearing held that same day, the circuit court appointed the public guardian as attorney and guardian ad litem for A.F., and the public defender as attorney for his parents. Thereafter, the petition was amended to allege that A.F. was a dependent minor through no fault of his parents. (Ill.Rev.Stat.1989, ch. 37, par. 802-4(1)(c).) The count alleging neglect was stricken from the petition.
On October 19, 1989, the circuit court accepted A.F.'s parents' admission that A.F. was a dependent minor and entered a finding of no-fault dependency. The court also ordered a supplemental social investigation.
On December 19, 1989, a dispositional hearing was held. A.F., who was 16 years old at the time[1], was adjudicated a ward of the court and Gary T. Morgan, the guardianship administrator of DCFS, was appointed his guardian.
On June 27, 1990, the public guardian filed a petition for supplemental relief asking the circuit court to "direct DCFS to screen with the State's Attorney's Office a Petition for Adjudication of Wardship regarding [A.F.] alleging that he is neglected and abandoned based on his parents' refusal to maintain contact with him, their refusal to cooperate with efforts toward reunification, and their refusal to accept the child back into their home after the expiration of the six-month limit on custody subsequent to a finding of no-fault dependency." At a hearing on July 12, 1990, the State and DCFS regional counsel moved to vacate guardianship of A.F., terminate wardship, and close the case.
At the hearing, Victoria Davis, a DCFS follow-up worker, testified that the case was initiated when A.F.'s parents refused to pick him up from Chicago Reed Mental Health Center. His parents also had refused to cooperate with DCFS since that time and had not sought to regain custody and would not allow him to return home because of his violent behavior.
Robert Longo, a clinical social worker, testified that he had counseled A.F. at St. Joseph Solace Place. A.F. was diagnosed as having conduct disorder and major depression; he had made minimal progress during therapy and had exhibited violent behavior towards people and property. A.F. had made several attempts to contact his parents by letter and telephone, but they had not responded. Longo believed that A.F.'s parents should participate in counseling and that A.F. should be allowed sibling visitation with staff supervision; however, when Longo wrote two letters to A.F.'s parents attempting to initiate reunification efforts, he received no replies. Longo believed that it was not in A.F.'s best interests to be returned to his parents at that time.
Although the State admitted that it did "not believe it is in the best interest of the minor for guardianship to be vacated, wardship terminated and the case closed," it, with DCFS concurring, contended that the statute mandated those orders because A.F. had been removed from the custody of his parents for longer than six months pursuant to the adjudication that he was a dependent minor. Counsel for the parents argued that closing the case would not be in the best interests of A.F. because he was *482 not ready to return home. The public guardian argued that the circuit court should direct the State to file a second petition for adjudication of wardship on the grounds of parental neglect. The State responded that if a second petition were to be filed, the allegation of neglect would have to be against DCFS because it had legal custody of A.F.
The circuit court denied the motions of the State and DCFS to vacate guardianship, terminate wardship, and close the case. The circuit court also denied the public guardian's motion to direct the State to file a petition for adjudication of wardship based upon parental neglect and abandonment. A.F., through the public guardian, appeals, contending that the circuit court should have directed the State to file a petition for adjudication of wardship on his behalf.
A.F. contends that his parents' failure to achieve or even to work towards reunification justified the filing of a neglect and abandonment petition. He maintains that his parents failed to involve themselves with any services aimed at reunification and that his parents initiated no phone contact with him, failed to send him any written correspondence, failed to respond to his therapist's written requests, and refused to speak with him when he telephoned. He thus maintains that the court improperly allowed him to remain a no-fault dependent after the statutory six-month time limitation expired. See Ill.Rev.Stat.1989, ch. 37, par. 802-4(1)(c).
In this court, the public defender, representing A.F.'s parents, responds that this case is now moot. A case becomes moot where the issues involved in the circuit court no longer exist because events occurring after the filing of the appeal render it impossible for the reviewing court to grant the complaining party effectual relief. (In re A Minor (1989), 127 Ill.2d 247, 255, 130 Ill.Dec. 225, 537 N.E.2d 292.) Here, since A.F. has reached his eighteenth birthday, the public defender maintains that he can no longer be adjudged a neglected minor pursuant to the Juvenile Court Act. See Ill.Rev.Stat.1989, ch. 37, par. 802-3.
An exception to the mootness doctrine occurs when a case presents an issue of substantial public interest. (In re E.G. (1989), 133 Ill.2d 98, 105, 139 Ill.Dec. 810, 549 N.E.2d 322.) In determining whether a case exhibits the requisite degree of public interest, a reviewing court must look to "the public or private nature of the question presented, the desirability of an authoritative determination for the future guidance of public officers, and the likelihood of future recurrence of the question." People ex rel. Wallace v. Labrenz (1952), 411 Ill. 618, 622, 104 N.E.2d 769.
We find that this case falls within the public interest exception to the mootness doctrine. Certainly, the proper adjudication of what is in the best interests of minors is of surpassing public concern. We note that the allegations of neglect against A.F.'s parents occurred prior to A.F.'s eighteenth birthday, as did all the hearings before the circuit court. We believe that this court should not deny review simply because A.F. turned 18 years old during the pendency of the appeal. As the public guardian contends, given the length of time necessary to resolve issues raised in appeals, questions such as those involved in the instant case are likely to recur should a minor, like A.F., who is close to his eighteenth birthday, appeal a similar order of the circuit court. Accordingly, we consider the issues raised by the parties in this case.
In this court, A.F. contends that the circuit court erred in extending the six-month no-fault period and in denying his motion to require the State to file a petition for adjudication of wardship; the State, however, maintains that A.F. should not be permitted to contest the court's extension of the six-month no-fault term because he failed to object to the extension in the circuit court. A.F. replies that he made no objection in the circuit court because he was desirous of having DCFS's wardship continue while issues involving the requested petition were being litigated. He correctly states that the Juvenile Court Act *483 permits the continuation of one status while a supplemental petition to determine another status is considered. (See Ill.Rev. Stat.1989, ch. 37, par. 802-13(5).) He contends that termination of DCFS's wardship would leave him unprotected until another petition could be filed and would present the risk that a second petition for adjudication of wardship would fail, thus placing him in a "precarious" position. See In re J.J. (1991), 142 Ill.2d 1, 10-11, 153 Ill.Dec. 239, 566 N.E.2d 1345.
Because we consider the issue of the court's denial of the requested petition to be related to the various options available to the circuit court, we consider whether the court properly extended the six-month limitation.
The overriding purpose of the Juvenile Court Act is to ensure that the best interests of the minor, the minor's family, and the community are served. (Ill.Rev. Stat.1989, ch. 37, par. 801-2(1).) In dependency and neglect proceedings both the State's Attorney and the court are charged with the duty of ensuring that at each step of the wardship adjudication process the best interests of the minor, the minor's family, and the community are served. (In re J.J., 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345.) Here, though we recognize the efforts of the State's Attorney and the circuit court to fulfill their duty to A.F., we find that, given the allegation that A.F.'s parents demonstrated a complete lack of concern for his well-being, the court erred when it allowed A.F. to remain a no-fault dependent beyond the six-month limitation, without requiring the State to file the requested petition for adjudication of wardship.
The relevant portion of section 2-4 of the Juvenile Court Act, commonly known as the no-fault dependency provision, defines a dependent as a minor under 18 years of age,
"who is without proper medical or other remedial care recognized under State law or other care necessary for his or her well being through no fault, neglect or lack of concern by his parents, guardian or custodian, provided that no order may be made terminating parental rights, nor may a minor be removed from the custody of his or her parents for longer than 6 months, pursuant to an adjudication as a dependent minor under this subsection ***." (Ill.Rev.Stat. 1989, ch. 37, par. 802-4(1)(c).)
Notwithstanding section 2-4's specific prohibition against removing a minor from his parents for longer than six months, the circuit court here allowed A.F. to remain in foster care for more than nine months. Though the court recognized the problem of A.F.'s parents regaining custody given their complete lack of attention to or concern for their child, the court's only remedyallowing A.F. to remain a no-fault dependentwas not in the best interest of A.F.
In the instant case, A.F. petitioned the court to direct the State to file a petition for adjudication of wardship on the grounds that he was a neglected and abandoned minor. Such a petition was proper because it reflects the statutory aim of providing a number of avenues of access to the juvenile court for minors who need its services. (See People ex rel. Davis v. Vazquez (1982), 92 Ill.2d 132, 150-51, 65 Ill.Dec. 262, 441 N.E.2d 54.) Such a petition thus enables the court to fulfill its duty to a minor to receive the care and guidance which the Juvenile Court Act provides. See In the Interest of James J. (1989), 193 Ill.App.3d 75, 80, 140 Ill.Dec. 183, 549 N.E.2d 834, aff'd In re J.J. (1991), 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345.
We reject the State's argument that such a petition would be inappropriate since it would have to allege that the current legal custodian, DCFS, was not providing proper care for the minor. Clearly, A.F.'s parents have the responsibility to work for the benefit of their child, even when that child is under the guardianship of the State; the failure of parents to work towards the return of their child is a basis for a finding of unfitness and the termination of parental rights. (See In the Interest of T.R. (1985), 135 Ill.App.3d 1017, 1022, 90 Ill.Dec. 553, 482 N.E.2d 372.) Simply because DCFS is *484 the current legal guardian does not relieve the parents of their duties and responsibilities to their child. (See In re J.R.Y. (1987), 157 Ill.App.3d 396, 399, 109 Ill.Dec. 673, 510 N.E.2d 541.) If that were the case, A.F.'s parents would be granted immunity from a finding of parental neglect and abandonment for the sole reason that DCFS is the legal guardian of their son, a result we deem contrary to the purpose of the Juvenile Court Act.
We find that, based upon A.F.'s parents' failure to maintain contact with him and their alleged lack of concern for his wellbeing, the circuit court should have granted A.F.'s request to direct the State to file a petition for adjudication of wardship. Regarding the six-month limitation imposed by section 2-4, we can envision times when the best interest of the minor requires an extension of the time period. For example, an extension would be in the best interest of the minor where parents demonstrate proper effort and concern, and all parties, including the minor, agree that an extension is proper, or, where an extension is granted while another status determination is being considered. Here, however, once the circuit court denied A.F.'s motion to have the State file a petition for adjudication of wardship, there was no circumstance justifying an extension of the six-month time limitation. Indeed, the extension was not in A.F.'s best interest. The circuit court's action relegated A.F. to long-term foster care with no hope of adoptive placement because the no-fault dependency status prohibits the termination of parental rights.[2] Ill.Rev.Stat. 1989, ch. 37, par. 802-4(1)(c).
We conclude that the circuit court should have ordered the State to file a new petition for adjudication of wardship based upon parental neglect and abandonment, and should have either terminated A.F.'s wardship or allowed it to continue while the petition was under consideration. Under the circumstances in the present case, the circuit court erred in allowing A.F. simply to remain a no-fault dependent after the statutory six-month time limitation had expired.
The order of the circuit court is reversed and the cause is remanded for further proceedings consistent with this opinion.
Reversed and remanded.
SCARIANO, P.J., and HARTMAN, J., concur.
NOTES
[1] On July 29, 1991, during the pendency of this appeal, A.F. turned 18.
[2] The public defender has characterized A.F.'s chances for adoptive placement as "highly unlikely" because of his advanced age and "apparent psychological and emotional problems." We find, however, that the public defender's speculation on A.F.'s prospects for adoption is irrelevant to our determination.