684 N.E.2d 930 (1997)
291 Ill. App.3d 872
225 Ill.Dec. 939
In re JUSTIN T., a Minor, (The People of the State of Illinois, Petitioner-Appellee, Office of the Cook County Public Guardian, Respondent-Appellant).
No. 1-96-3075.
Appellate Court of Illinois, First District.
August 27, 1997.
*931 Patrick T. Murphy, Public Guardian of Cook County, Chicago (Lee Ann Lowder and Amina Saeed, of counsel), for appellants.
Richard A. Devine, Cook County State's Attorney, Chicago (Renee Goldfarb, Elizabeth A. Scholz, Stephanie D. Callas, Assistant State's Attorneys, of counsel), for appellee.
Presiding Justice COUSINS delivered the opinion of the court:
The minor, Justin T., by his attorney and guardian ad litem, appeals from an order of the circuit court granting the State's motion to dismiss the petition for adjudication of wardship filed on behalf of the minor without first appointing an attorney and guardian ad litem to represent the minor. On appeal, the minor argues that the court's refusal to appoint a guardian ad litem for the child, who was the subject of child protection proceedings, violated the express requirements of the Juvenile Court Act of 1987 (705 ILCS 405/1-1 et seq. (West 1992)) and denied the child due process of law and meaningful access to the court.

BACKGROUND
On July 2, 1996, the State filed a petition for adjudication of wardship on behalf of Justin T., a minor who was born on October 11, 1993. The petition alleged that Justin was neglected and abused. The petition listed Justin's mother as Lorie Ann T. of Oak Forest, Illinois, and alleged that, on or about *932 June 30, 1996, she left Justin with a friend without providing an adequate plan for his care. The petition also alleged that Justin tested positive for controlled substances at birth. The State also filed a petition for the appointment of the Department of Children and Family Services (DCFS) as Justin's temporary custodian. This petition alleged that Lorie Ann's whereabouts were unknown.
A hearing was held on both of the petitions on July 2, 1996. At the hearing, the State advised the court that it would move to dismiss the petition and present the basis for dismissal through the testimony of the individual who called to report that Justin was abused and neglected. At that time, the public guardian asked to be appointed as attorney and guardian ad litem on behalf of the minor. The State replied that its motion to dismiss should precede the ruling on the public guardian's request to be appointed. The public guardian argued that the minor had a constitutional right to be heard and have a guardian appointed under sections 1-5 and 2-17 of the Juvenile Court Act (705 ILCS 405/1-5, 2-17 (West 1992)). The State responded that the hearing on the motion to dismiss was not a hearing on the petition and that it, as the moving party on the motion, had a right to dismiss under the Code of Civil Procedure. The trial court indicated that it would hear from the State and then decide what should be done and allowed the State to call a witness.
The State called Gerald McNanari (McNanari) to testify in support of the motion to dismiss. McNanari testified that he called the DCFS hotline to report that Justin had been left at his home. However, McNanari testified at the hearing that, contrary to his report to DCFS, Justin was not just left at his home but that Justin lived and his mother lived with McNanari at his home. McNanari testified that he had been living with Justin's mother for six or seven years. McNanari testified that his report that Justin's mother had been raped in Justin's presence was not true. He also stated that his report that Justin's mother had told him that a loan shark struck Justin was true but that he had no evidence to support her statement. When the State asked McNanari why he made the false report, McNanari testified that he wanted to get rid of Justin because Justin's mother had left Justin with him for such a long time without returning and Justin was getting on his nerves. He explained that Justin's mother had a part-time babysitting job and that she did not return because her employers were late returning and they did not have a phone she could use to call him. McNanari further testified that he made sure this situation would never happen again by getting rid of the car to which Justin's mother had access. Based on this testimony, the State then moved to dismiss the petition.
The public guardian asked to question the witness and the State responded that the public guardian lacked standing to do so. The trial court then inquired about the allegations that Justin's environment was injurious, that Justin was a drug-exposed infant and that Justin's mother was undomiciled. The State responded that Justin was now 2 1/2 years old and that the testimony showed that the mother was not undomiciled. At that point, Justin's mother, who was present in court, stated that she had identification to prove her residence and the State tendered the mother's driver's license to the trial court. After reviewing Justin's mother's license, the trial court stated:
"Well, it appears that mother has a domicile, and that domicile is with the friend that made the report. And I would suggest to the guardian, if the guardian feels that something more has to be doneI'll note that the Department did not take this minor into custody.
* * * * * *
I'm sorry. They did take the minor into custody. Thank you. It appears to me what they have is a dispute within the house, and it * * * started a ball rolling that shouldn't be rolling. I'm going to grant your motion to dismiss the petition. If the guardian feels there's a case here, they can certainly file a citizen's petition and bring it back."
At this point, the public guardian again asked to question the witness to which the State responded that the public guardian had no standing in the matter. In response, the trial court stated, "There's no one in the case *933 except the State. A petition is filed today." The petition was then dismissed without prejudice.
On July 9, 1996, a second petition for adjudication of wardship was filed on behalf of Justin. The second petition was identical to the original petition except that the second petition stated the name of Justin's father and stated the mother's whereabouts as "currently unknown" instead of "mother currently undomiciled." The State again moved for temporary custody. On July 10, 1996, an assistant public guardian was appointed as Justin's attorney and guardian ad litem and a DCFS guardianship administrator was appointed as Justin's temporary custodian.
On November 14, 1996, an adjudicatory hearing was held at which Justin was found to be a neglected minor. The basis of the finding was that Justin tested positive for a controlled substance at birth. The minor appeals from the trial court's dismissal of the original petition.
We vacate.

OPINION
The public guardian contends that the trial court erred when it refused to appoint a guardian ad litem for Justin before granting the State's motion to dismiss the petition, because section 2-17 of the Juvenile Court Act expressly requires the trial court to appoint a guardian ad litem to represent the child who is the subject of child protection proceedings upon the filing of a petition for adjudication of wardship which alleges that a minor is abused or neglected. The State responds that this case is moot because a subsequent petition, filed later on behalf of Justin, has already been disposed of at an adjudicatory hearing, thus disposing of the need for any relief to Justin in this case.
A case on appeal becomes moot where the issue involved in the trial court no longer exists because events occurring after the filing of the appeal render it impossible for the reviewing court to grant the complaining party effectual relief. In re A Minor, 127 Ill.2d 247, 255, 130 Ill.Dec. 225, 537 N.E.2d 292 (1989); In re A.F., 234 Ill.App.3d 1010, 1013, 176 Ill.Dec. 826, 602 N.E.2d 480 (1991); In re A.D.W., 278 Ill.App.3d 476, 480, 215 Ill.Dec. 308, 663 N.E.2d 58 (1996). Thus, questions arising from a trial court's order are moot when, because of developments following the issuance of that order, reversal of the order can have no practical effect on the controversy. Harris v. Education Officers Electoral Board of Community Consolidated School District 110 203 Ill.App.3d 917, 920, 148 Ill.Dec. 898, 561 N.E.2d 204 (1990).
In the instant case, the State maintains that Justin's rights cannot be affected by this appeal because a second petition for adjudication for wardship for him has since been adjudicated. In reply, however, the public guardian points out that a court may consider moot issues if they involve a question of public interest. In re A Minor, 127 Ill.2d at 257,130 Ill.Dec. 225, 537 N.E.2d 292.
When determining if a matter falls within the public interest exception, courts consider the public nature of the question, the desirability of an authoritative determination for the future guidance of public officers and the likelihood of future recurrence of the question. In re A Minor, 127 Ill.2d at 257, 130 Ill.Dec. 225, 537 N.E.2d 292; In re Patricia S., 222 Ill.App.3d 585, 589, 165 Ill. Dec. 91, 584 N.E.2d 270 (1991); In re A.F., 234 Ill.App.3d at 1014, 176 Ill.Dec. 826, 602 N.E.2d 480. This case falls within the public interest exception.
"[T]he proper adjudication of what is in the best interests of minors is of surpassing public concern." In re A.F., 234 Ill.App.3d at 1014, 176 Ill.Dec. 826, 602 N.E.2d 480. We believe it is desirable that circuit court judges receive guidance as to when they must appoint a guardian ad litem whose function it is to secure the best interests and welfare of minor children. See generally 704 ILCS 405/1-2 (West 1992). Furthermore, as the public guardian contends, given the number of child neglect and dependency proceedings in which public guardians are appointed, we believe this issue is likely to recur should the State attempt to dismiss a petition before adjudication proceedings begin. Therefore, we will address the issue of whether the trial court improperly declined to appoint an attorney and guardian ad litem for Justin before *934 dismissing the petition for adjudication of wardship.
Justin contends that the trial court was required to appoint a guardian ad litem to represent him because the plain language of section 2-17 of the Juvenile Court Act (705 ILCS 405/2-17 (West 1992)) provides that the court "shall" appoint a guardian ad litem upon the filing of the petition that a minor is abused or neglected. We agree.
Section 2-17(1) provides in pertinent part:

"Immediately upon the filing of a petition alleging that the minor is a person described in Section [ ] 2-3 or 2-4 of this Article, the court shall appoint a guardian ad litem for the minor if:
(a) such petition alleges that the minor is an abused or neglected child." (Emphasis added.) 705 ILCS 405/2-17 (West 1992).
When interpreting a statutory provision and attempting to determine the legislature's intent, a court must give the legislative language its plain and ordinary meaning; legislative intent is clear when the language of the provision is plain and unambiguous and it will be given effect as written without resorting to other aids for construction. Cella v. Sanitary District Employees' & Trustees' Annuity & Benefit Fund, 266 Ill.App.3d 558, 564, 203 Ill.Dec. 516, 639 N.E.2d 1335 (1994).
In our view, the language of section 2-17 is plain, ordinary and unambiguous. Section 2-17 requires the appointment of a guardian ad litem upon the filing of a petition alleging that a minor is a person described in section 2-3 of the Act titled a "Neglected or abused minor" (704 ILCS 405/2-3 (West 1992)), or section 2-4 of the Act titled a "Dependent minor" (705 ILCS 405/2-4 (West 1992)), and if the petition alleges that the minor is an abused or neglected child. Here, our review of the record shows that the original petition for adjudication of wardship alleged that Justin was a neglected minor pursuant to section 2-3(1)(a) for lack of care; section 2-3(1)(b) for being left in an injurious environment; section 2-3(1)(c) for testing positive for controlled substances; and section 2-3(2)(ii) for being at substantial risk of physical injury. 705 ILCS 405/2-3(1)(a), (b), (c), (2)(ii) (West 1992). Furthermore, we believe the trial court had no discretion to decide whether to appoint an attorney or guardian ad litem to represent Justin because the statute unequivocally states that the court "shall" appoint a guardian ad litem upon the filing of a petition in which it is alleged that a minor is abused or neglected. See generally Newkirk v. Bigard, 109 Ill.2d 28, 33, 92 Ill.Dec. 510, 485 N.E.2d 321 (1985) (the use of the word "shall" in a statute indicates a mandatory obligation, unless the obligation indicates otherwise). Thus, the trial court was incorrect in its belief that there was "no one in the case except the State" and that it could not appoint a guardian ad litem when faced with the State's motion to dismiss. Rather, the trial court should have appointed a guardian ad litem upon reviewing the petition and finding that it alleged that Justin was a neglected child.
We believe In re J.J., 142 Ill.2d 1, 153 Ill.Dec. 239, 566 N.E.2d 1345 (1991), supports our interpretation of the Act. In In re J.J., the State's Attorney moved to dismiss petitions of adjudication of wardship for three minor children and the public guardian objected. The circuit court dismissed the petitions on the basis that it lacked authority to hear the merits of the State's motion to dismiss because the State's Attorney's office had exclusive authority to prosecute child abuse and neglect cases. In re J.J., 142 Ill.2d at 4, 153 Ill.Dec. 239, 566 N.E.2d 1345. The appellate court reversed the circuit court's ruling and held that the circuit court was required to consider on its merits a motion to dismiss for adjudication of wardship whenever dismissal is deemed warranted by the State, because failure to do so overlooks the purposes behind the Juvenile Court Act. In re J.J., 142 Ill.2d at 5, 153 Ill.Dec. 239, 566 N.E.2d 1345. The Illinois Supreme Court affirmed the appellate court and stated that, in dependency and neglect cases, both the State's Attorney and the court are charged with ensuring that the best interests of the minor, the minor's family and the community are served. In re J.J., 142 Ill.2d at 8-9, 153 Ill.Dec. 239, 566 N.E.2d 1345. The supreme court stated:

*935 "The legislature has also determined that in all proceedings brought under the Juvenile Court Act, the court may direct the course thereof so as promptly to ascertain the jurisdictional facts and fully to gather information bearing upon the current condition and future welfare of persons subject to [the Juvenile Court] Act.'" 142 Ill.2d at 9, 153 Ill.Dec. 239, 566 N.E.2d 1345, quoting Ill.Rev.Stat.1987, ch. 38, par. 802-21(1).
In the instant case, if a guardian ad litem had been appointed at the hearing on the original petition, the guardian would have been able to cross-examine McNanari and provide the court with additional information by which to make its determination on the State's motion. Thus, we believe that the appointment of a guardian ad litem upon the filing of a petition under section 2-17 of the Act constitutes full compliance with the statutory requirements of the Act and the legislature's intent to provide the court with a way in which to fully gather information bearing upon the current condition and future welfare of minors.
For the foregoing reasons, the judgment of the circuit court is vacated.
Vacated.
LEAVITT and CAHILL, JJ., concur.