NOTICE

Decision filed 06/05/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 260126-U

NO. 5-26-0126

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| *In re* ALLEN W., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Champaign County. |
| | ) | |
| Petitioner-Appellee, | ) | |
| | ) | |
| v. | ) | No. 25-JA-70 |
| | ) | |
| Lucero G., | ) | Honorable |
| | ) | Robert E. Jacobson, |
| Respondent-Appellant). | ) | Judge, presiding. |

JUSTICE McHANEY delivered the judgment of the court.
Justices Hackett and Clarke concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The dispositional order that found it to be in the best interest of the minor to be made a ward of the court and placed in the custody and guardianship of the Department of Children and Family Services is affirmed because the circuit court's findings were not against the manifest weight of the evidence and the selected disposition was not an abuse of discretion.

¶ 2    The respondent, Lucero G. (Mother), appeals the circuit court of Champaign County's January 15, 2026, dispositional order. Mother challenges the circuit court's finding that she was unfit and unable to parent the minor and asserts that the circuit court abused its discretion in finding that removal of the minor from her custody was in his best interest. For the following reasons, we affirm.

1

¶ 3                                    I. BACKGROUND

¶ 4      This case began with the filing, on September 17, 2025, of a petition for adjudication of abuse, neglect, or dependency regarding Mother's minor child, Allen W., who was born in September 2016. The petition alleged the minor is neglected pursuant to section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2024)) by reason of being in an environment that is injurious to his welfare when he resides with Mother because he is exposed to substance abuse (count I), and he is exposed to domestic violence (count II). The petition was amended by interlineation on October 16, 2025, to correct the minor's address and Mother's birthdate. The allegations of neglect remained the same.

¶ 5      An adjudicatory hearing was held on December 18, 2025. Mother admitted and stipulated to the allegations of count I, that the minor is neglected by reason of being in an environment that is injurious to his welfare when he resides with Mother because he is exposed to substance abuse. Count II was dismissed. The State provided the following factual basis for the stipulation. Mother had been involved with the One Hope United intact family service program since February 28, 2025. As part of the intact case, Mother was recommended to complete substance abuse treatment. Mother was unsuccessfully discharged from the Rosecrance substance abuse treatment program, and she missed screenings to test her for drug and alcohol use. Mother admitted to caseworkers from One Hope United that she consumed alcohol on July 29, 2025; August 4, 2025; and August 12, 2025. Additionally, Champaign County sheriff's deputies had encounters with Mother on May 23, 2025, and August 1, 2025, due to Mother engaging in physical altercations while intoxicated.

¶ 6      The circuit court accepted Mother's admission and stipulation, finding that they were made knowingly, understandingly, and voluntarily, and that they were supported by a factual basis. The circuit court entered a written adjudicatory order on December 18, 2025, finding the minor is

2

neglected. The circuit court directed the Department of Children and Family Services (DCFS) to conduct a home and background investigation, prepare a written report of the results, and present the report to the parties and court prior to the dispositional hearing. The dispositional hearing was scheduled for January 15, 2026.

¶ 7    A dispositional report, prepared by Candyce Neil, intact supervisor, with One Hope United, was filed on January 12, 2026. The dispositional report indicated that Mother was recommended to complete substance abuse services, including completing an assessment, complying with all treatment, attending Alcoholics Anonymous or Narcotics Anonymous, participating in random drug screens, and developing a relapse plan. Mother's progress as to substance abuse services was rated as unsatisfactory. Mother was unsuccessfully discharged from the Rosecrance substance abuse program on August 7, 2025. She was reassessed on November 7, 2025. Mother attended half of a session on November 18, 2025, and canceled another appointment on November 18, 2025. She completed drug screenings on December 4, 2025, and December 31, 2025. Mother missed a drug screening scheduled for December 11, 2025. The drug screening result from December 4, 2025, was negative, but adulterated. The drug screening from December 31, 2025, was positive for cocaine.

¶ 8    Mother was also recommended for services regarding the minor's medical care. Mother was rated satisfactory on this recommendation despite the minor missing medical appointments in August and September 2025. The minor was seen on October 9, 2025, and was cleared to resume regular activity.

¶ 9    The dispositional report recommended that the current goal be "remain intact." The reasoning for this recommended goal was because the "minor remains safe in the mother's care and the family demonstrates a commitment to staying together."

3

¶ 10    A DCFS integrated assessment completed on April 14, 2025, was included with the dispositional report. The integrated assessment set forth the reason for the case opening as follows. Mother took the minor, who was eight years old, to the emergency department. Mother reported that the minor had flu symptoms for the past 24 hours so she gave him Tylenol and Delsym. Mother admitted that she did not measure the medication or read the instructions before administering the medication to the minor. Mother allowed the minor to drink the medication directly from the bottle. Mother did not know the amount of medication the minor took and described it as "a lot." At the emergency department, the minor presented with nausea, vomiting, lethargy, and increased liver enzymes. The medical providers suspected an overdose, and the minor was transferred to another hospital for a higher level of care. The integrated assessment also included the following prior history with DCFS that resulted in indicated findings of abuse and/or neglect: (1) in March 2020, Mother was indicated for neglect of the minor for driving under the influence (DUI) and fleeing while the minor was in the vehicle; (2) in July 2024, Mother was indicated for neglect of the minor due to being intoxicated and hearing voices; and (3) in January 2025, Mother was indicated for neglect for the incident involving the administration of Tylenol and Delsym.

¶ 11    The dispositional hearing was held on January 15, 2026. Prior to presenting witnesses, the State offered petitioner's exhibit 1, which included two Champaign County Sheriff's Office police reports dated May 23, 2025, and August 1, 2025. The police reports were admitted into evidence for the purpose of the dispositional hearing without objection. Additionally, the State requested that the circuit court take judicial notice of Champaign County case No. 24-MT-1308, in which Mother was placed on conditional discharge for driving while her license was suspended or revoked. No parties objected, and the circuit court took judicial notice of the case.

¶ 12    Moneesha Sibley was the only witness to testify at the hearing and was called by the State. Sibley testified that she is employed by One Hope United as an intact case manager, and she had been employed in that role since October 2024. Sibley was the caseworker assigned to the case involving Mother and the minor since June 2025. The case was opened with a former caseworker prior to Sibley's involvement; Sibley reviewed the former caseworker's notes.

¶ 13    Sibley testified that the intact case was opened when the minor was taken to the emergency department after being administered medication directly from the bottle. As a result of that incident, Mother was recommended for intact services to monitor her substance abuse and the minor's medical care.

¶ 14    Sibley noted that her supervisor, Candyce Neil, prepared the dispositional report that recommended that the family remain intact. Sibley stated that she did not agree that the minor should remain in the custody of Mother at this time. Sibley believed the minor should not be in the custody of Mother

> "[d]ue to the, the actual engagement of what we're trying to do and [Mother] and what we know [Mother] needs to understand in terms of substance abuse history, how it may affect, you know, the parenting of a child in the—in the care of her. And then also understanding that we want the betterment for her and her sobriety and her mental health. We've been struggling with that since we've been on the case with her."

¶ 15    As of the hearing date, Mother was engaged in substance abuse counseling at Rosecrance. Sibley testified that Mother completed a substance abuse assessment at Rosecrance on November 7, 2025. Sibley stated Mother had been cooperative with random drug screenings. Sibley was made aware that Mother's drug screen from December 31, 2025, was positive for cocaine. Mother was

5

previously discharged unsuccessfully from substance abuse services at Rosecrance in August 2025.

¶ 16    Sibley also visited the minor weekly, either at his home with Mother or at school. Sibley testified that she was not aware of the minor suffering any issues or side effects from the medication incident. When Mother is not available to care for the minor, he is cared for by his maternal grandmother and great-grandmother.

¶ 17    After hearing arguments from the parties, the circuit court made oral pronouncements. The circuit court indicated that it had considered the dispositional report filed by One Hope United, all evidence and stipulations from the current hearing as well as prior hearings, the recommendations and arguments of all counsel, and the relevant facts and circumstances in light of the factors set forth in the Juvenile Court Act as to the best interest of the minor. The circuit court found that it was in the best interest of the minor and the public that he be made a ward of the court and adjudged neglected. The circuit court noted that the minor seemed "to be doing pretty well." However, the circuit court was concerned with "the escalating nature of things over the last few years." The court noted there was an indicated report in 2020 involving the Mother driving under the influence and fleeing with the minor in the vehicle, the 2024 indicated finding regarding Mother's intoxication, and the medication incident that resulted in the intact case being opened. After the intact case was opened, there were two involvements with the Champaign County Sheriff's Office involving physical violence. Additionally, Mother was unsuccessfully discharged from substance abuse services. Then, after the petition was filed in this case, Mother had drug screenings that were adulterated, positive for cocaine, or where she failed to appear. The circuit court found

> "based on this accelerating pattern and the recent drug use, I don't believe that [Mother] under the statute is fit or able right now to exercise custody, specifically for reasons other

than financial circumstances to care for, protect, train, or discipline [the minor], and his health, safety, and best interests would be jeopardized if he remained in [Mother's] custody."

¶ 18 The circuit court entered a written dispositional order the same day. The written order adopted and incorporated the circuit court's oral findings. The written order found Mother unfit and unable to care for the minor. Custody and guardianship of the minor was placed with the guardianship administrator of DCFS. This timely appeal followed.

¶ 19                                  II. ANALYSIS

¶ 20 The Juvenile Court Act (705 ILCS 405/1-1 *et seq.* (West 2024)) provides a step-by-step process to be used in determining whether a child should be removed from his or her parents and made a ward of the court. *In re Arthur H.*, 212 Ill. 2d 441, 462 (2004). Following the filing of a petition for wardship, the Juvenile Court Act requires an adjudicatory hearing, at which the court determines whether the child was the subject of abuse, neglect, or dependence. *Id.* This step is not at issue in this case, as Mother admitted and stipulated to the finding that the minor was neglected by reason of being in an environment that is injurious to his welfare when he resides with Mother because he is exposed to substance abuse.

¶ 21 Once the circuit court makes a finding of abuse, neglect, or dependence, the next step is reached, at which point the circuit court must hold a dispositional hearing. 705 ILCS 405/2-21(2) (West 2024).

"At the dispositional hearing, the court shall determine whether it is in the best interests of the minor and the public that the minor be made a ward of the court, and, if the minor is to be made a ward of the court, the court shall determine the proper disposition best serving the health, safety and interests of the minor and the public. The court also shall consider

7

*** the permanency goal set for the minor, the nature of the service plan for the minor and the services delivered and to be delivered under the plan. All evidence helpful in determining these questions, including oral and written reports, may be admitted and may be relied upon to the extent of its probative value, even though not competent for the purposes of the adjudicatory hearing." *Id.* § 2-22(1).

¶ 22 "The purpose of a dispositional hearing is not to terminate parental rights." *In re April C.*, 326 Ill. App. 3d 225, 237 (2001). Rather, "a dispositional hearing serves the purpose of allowing the circuit court to decide what further actions are in the best interests of a minor, and the hearing and ruling on whether to make a minor a ward of the court gives the parents 'fair notice of what they must do to retain their rights to their child' in the face of any future termination proceedings." *Id.* (quoting *In re G.F.H.*, 315 Ill. App. 3d 711, 715 (2000)).

¶ 23 At issue on appeal in this case are whether the evidence supports the findings the circuit court made following the dispositional hearing that Mother was unfit and unable to parent the minor and whether it was an abuse of discretion to remove the minor from Mother's custody. "Cases involving abuse, neglect and wardship are *sui generis*; each case must be decided on its own distinct set of facts and circumstances." *In re M.W.*, 386 Ill. App. 3d 186, 197 (2008). "Though the court, when making the wardship determination, considers the specific parent's capability to care for the child, *** the wardship determination is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life." *In re D.S.*, 2018 IL App (3d) 170319, ¶ 15.

¶ 24 "When ruling on parental unfitness, a court is not to consider the child's 'best interests' "; " '[i]t is the parent's past conduct in the then-existing circumstances that is under scrutiny.' " *In re Latifah P.*, 315 Ill. App. 3d 1122, 1128 (2000) (quoting *In re Adoption of Syck*, 138 Ill. 2d 255,

8

276 (1990)). "[T]he term 'unfit' in the section relating to removing custody and guardianship from a parent following a finding of neglect differs in meaning from the unfitness required to be found for termination of parental rights for purposes of appointing a guardian with consent to adopt." *In re T.B.*, 215 Ill. App. 3d 1059, 1061 (1991).

¶ 25 The circuit court's findings regarding wardship and fitness at the dispositional hearing stage are given great deference because it has the best opportunity to view and evaluate the parties and their testimony. *In re Daphnie E.*, 368 Ill. App. 3d 1052, 1064 (2006); *In re T.B.*, 215 Ill. App. 3d at 1061. Because a circuit court is in a superior position to assess the credibility of witnesses and weigh the evidence, a reviewing court will not overturn the circuit court's findings merely because the reviewing court may have reached a different decision. *In re Lakita B.*, 297 Ill. App. 3d 985, 994 (1998). A circuit court's determination of wardship or fitness will be reversed "only if the factual findings are against the manifest weight of the evidence." *In re Kamesha J.*, 364 Ill. App. 3d 785, 795 (2006). A finding is against the manifest weight of the evidence only if the opposite conclusion is clearly apparent. *In re C.N.*, 196 Ill. 2d 181, 208 (2001).

¶ 26 Following a determination of wardship and a finding that the parents are unfit, the circuit court is tasked with determining a disposition that best serves the minor's interests. *In re Al. S.*, 2017 IL App (4th) 160737, ¶ 40.

> "Under section 2-27(1) of the Juvenile Court Act, the trial court may commit a minor to DCFS wardship if it determines that the parent is unfit or unable, for some reason other than financial circumstances alone, to care for, protect, train, or discipline the minor and that the health, safety, and best interests of the minor will be jeopardized if the minor remains in the custody of the parent. [Citation.] *** The health, safety and interests of the minor remain the guiding principles when issuing an order of disposition regarding the

9

custody and guardianship of a minor ward. [Citation.] The trial court's determination will be reversed only if the factual findings are against the manifest weight of the evidence or if the court abused its discretion by selecting an inappropriate dispositional order. [Citation.]" *In re Kamesha J.*, 364 Ill. App. 3d at 795. A circuit court "abuses its discretion when no reasonable person would agree with its decision." *In re M.P.*, 408 Ill. App. 3d 1070, 1073 (2011).

¶ 27 Mother contends the circuit court's finding that she was unfit and unable to care for the minor was against the manifest weight of the evidence because the circuit court relied on the 2020 DUI and the 2024 indicated finding regarding Mother's intoxication, and these events were too remote in time to consider at the dispositional hearing in January 2026. Additionally, Mother argues the incidents that resulted in the Champaign County Sheriff's Office responding did not pose any danger to the minor. Mother has not cited to any authority that would prevent the circuit court from considering the foregoing.

¶ 28 As set forth above, "[w]hen ruling on parental unfitness," " '[i]t is the parent's past conduct in the then-existing circumstances that is under scrutiny.' " *In re Latifah P.*, 315 Ill. App. 3d at 1128 (quoting *In re Adoption of Syck*, 138 Ill. 2d at 276). The circuit court was presented evidence regarding Mother's past conduct before the intact case was opened, what led to the opening of the intact case, and Mother's behavior after the intact case. Based on the foregoing, the circuit court found Mother's accelerating pattern involving substance use and illegal drug use within weeks of the dispositional hearing supported the finding that she was unfit and unable to care for the minor at this time.

¶ 29 As to the circuit court's determination that it was in the minor's best interest to remove the minor from the custody of Mother, Mother cites to the Juvenile Court Act regarding the goal of

10

preserving family ties and the preferred result of a minor remaining in his home. Mother then concludes, without any further argument or explanation, that it was an abuse of discretion to remove the minor from her custody. Thus, Mother has forfeited review of her argument for failing to present well-reasoned argument. See Ill. S. Ct. R. 341(h) (eff. May 25, 2018). Forfeiture notwithstanding, Mother's argument that it was an abuse of discretion to remove the minor from her custody still fails.

¶ 30    "[T]he wardship determination is based on the best interest to the child when considering the totality of the circumstances surrounding the child's life." *In re D.S.*, 2018 IL App (3d) 170319, ¶ 15. While the circuit court noted the minor was doing "pretty well," the court also noted concerns for the minor's well-being and safety as a result of Mother's substance abuse issues. The circuit court found the minor's best interests would be jeopardized if he remained in Mother's custody.

¶ 31    Based on the totality of the circumstances, we find that a result opposite to that reached by the circuit court as to fitness and wardship was not clearly apparent, and the result reached by the circuit court was supported by the evidence. It was not against the manifest weight of the evidence to find Mother unfit and unable to care for the minor, and it was not an abuse of discretion to select a disposition that placed the minor in the custody and guardianship of DCFS.

¶ 32                                    III. CONCLUSION

¶ 33    For the foregoing reasons, we affirm the January 15, 2026, dispositional order of the Champaign County circuit court.


¶ 34    Affirmed.