2024 IL App (1st) 240143-U

Fourth Division
Filed May 2, 2024

No. 1-24-0143

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF | ) | |
| JACQUELINE PARRILLO, | ) | Appeal from the |
| | ) | Circuit Court of Cook County |
| Petitioner-Appellee, | ) | |
| | ) | No. 2017 D 004618 |
| and | ) | |
| | ) | The Honorable Abbey Fishman Romanek, |
| BEAU PARRILLO, | ) | Judge, presiding. |
| Respondent-Appellant. | ) | |

JUSTICE OCASIO delivered the judgment of the court.
Presiding Justice Rochford and Justice Martin concur in the judgment.

## ORDER

¶ 1    *Held:*    The court lacked jurisdiction to consider contemnor's interlocutory appeal of order amending body-attachment order *nunc pro tunc*. Contemnor failed to show that the trial court erred by modifying the contempt sanction to permit his release from jail on home confinement with electronic monitoring.

¶ 2    In July 2023, appellant Beau Parrillo was adjudged to be in contempt of court for failing to comply with the judgment that dissolved his marriage to appellee Jacqueline Parrillo. The trial court ordered him committed to jail until he purged his contempt by paying Jacqueline more than a million dollars, which represented slightly more than half of what he owed her, but stayed the commitment to give Beau the opportunity to make the payments. When he failed to do that, the court entered a series of body-attachment orders directing the sheriff to take him into custody. Beau was apprehended in December 2023 and brought before the court, which entered a series of orders

effectively permitting Beau to be released to home confinement upon paying approximately half of the purge amount. Beau now appeals those orders. We dismiss his appeal from one of those orders for lack of jurisdiction. Otherwise, we affirm.

¶ 3                                     BACKGROUND

¶ 4     Jacqueline and Beau Parrillo were married from 2002 until 2020, when the Circuit Court of Cook County entered a judgment for dissolution. Among other things, the dissolution judgment ordered Beau to (1) make monthly payments of $7500 for child support (2) make monthly payments of $10,000 for maintenance and spousal support, as required by the parties' premarital agreement, (3) make monthly payments of $100,000 to pay down the mortgage on Jacqueline's home, (4) maintain $10,000,000 in life insurance, and (5) transfer to Jacqueline 50% of the marital portion of two retirement accounts that were in Beau's name. To facilitate the transfer of the retirement accounts, the dissolution judgment named an attorney who would prepare qualified domestic relations orders (see 26 U.S.C. § 414(p) (2018)) and directed Beau to furnish that attorney with any documents she requested.

¶ 5     Three years later, in April 2023, Jacqueline filed a pair of petitions seeking rules to show cause why Beau should not be held in contempt for refusing to comply with the dissolution judgment. One petition involved Beau's ongoing financial obligations to Jacqueline. It alleged that, in December 2022, Beau stopped making the required child-support and spousal-maintenance payments to Jacqueline, stopped making monthly payments to pay down the mortgage, and stopped paying the premiums on the life-insurance policies he was required to maintain. The other petition pertained to the transfer of Jaqueline's portion of Beau's retirement accounts. It alleged not only that Beau had failed to take any action to have the qualified domestic relations orders prepared but that the accounts had been liquidated without notice to Jacqueline by his former employer, United Automobile Insurance Company (United Auto), which is a company owned in part by Beau along with his brother and his father. Beau filed responses in which he blamed his failure to make support payments on the loss of his job, denied being required to maintain the

specific life insurance policies that he had stopped paying for, and asserted that United Auto had "unilaterally distributed" the retirement accounts upon his termination. Beau did not specify where the distributions—which amounted to more than $1.8 million—had gone, but he claimed not to know whether any amount had been paid to Jacqueline. The trial court entered the rules requested by Jacqueline, and the matter proceeded to a contempt hearing on July 17, 2023. The record does not include a transcript of the hearing, but it shows that Beau appeared through counsel, not personally.

¶ 6     Following the hearing, the court entered two orders, each corresponding to one of Jacqueline's two petitions, finding Beau in indirect civil contempt. The first order pertained to the retirement accounts. It found Beau in contempt for willfully failing to pay Jacqueline the sum of $849,038.49, which represented her share of those accounts, and it ordered him to be committed to jail until he purged the contempt by paying that sum in full, but it stayed the commitment order until July 31. The second order pertained to Beau's ongoing financial obligations. It found him in contempt for willfully failing to make $1,071,636.80 in payments for child support, spousal maintenance, the mortgage, and the life insurance premiums, and it ordered him to be committed to jail until he purged the contempt by paying Jacqueline 20% of the past-due amount, which the court calculated to be $214,327.22,[1] but it stayed the commitment order until August 31.

¶ 7     Beau did not purge his contempt as to the retirement accounts by July 31, and he also failed to appear for the remote status hearing set for that date. The court entered an order of commitment directing the sheriff to take Beau into custody and keep him there until he posted a cash bond of $849,038.49, the amount of the purge. It issued a separate order of attachment for contempt directing the sheriff to take Beau into custody and either bring him before the court to answer for his failure to pay Jacqueline her share of the retirement accounts or to release him upon payment of an "Individual Bond set in the amount of $849,038.49." On August 10, the trial court issued another attachment order that directed the sheriff to take Beau into custody to answer for his failure

---

[1]   This figure appears to be a minor miscalculation: 20% of $1,071,636.80 is $214,327.36.

to appear in court. It authorized the sheriff to release Beau if he posted a "Cash Bond" of $849,038.49.

¶ 8    In late August, Beau filed a motion to vacate or stay enforcement of the attachment orders. The motion alleged that Beau was unable to pay the purge. It appears that the court stayed the commitment order until at least October 5. The record does not disclose what, if anything, happened on that date, but the court did not rule on the motion to vacate. On October 16, the court entered an order setting the motion to vacate or stay for a status hearing on October 30 and providing that "Beau Parrillo's remainder and statutory interest" from the July contempt orders would be determined on November 13.

¶ 9    On November 13, the court entered an order of commitment based on Beau's failure to pay Jacqueline $1,071,636.80 in ongoing financial obligations, setting the purge amount at $214,327.22. It also entered an attachment order commanding the sheriff to take Beau into custody and either bring him to court to answer for his failure to comply with the July 17 order directing him "to pay the sum of $1,071,636.80 to Jacqueline Parrillo by August 31st, 2023" or to release him from custody upon posting an "Individual Bond set in the amount of $214,327.22." After a hearing three days later, which Beau once again failed to personally attend, the court entered an order that, among other things, noted that the attachment and commitment orders associated with both contempt findings "remain[ed] valid and outstanding."

¶ 10    On November 29, Beau, through counsel, filed two motions. The first sought to modify his child-support obligations. It alleged that Beau no longer had any income as a result of being fired by his then-employer in November 2022 and, for reasons not explained, falling into a coma for nearly two months, leading to his hospitalization from August 14 to October 4, 2023, after which he stayed at an inpatient rehabilitation center until November 20. It further alleged that Beau was relying on his father for financial support. The second motion asked the court to reconsider, vacate, or stay enforcement of the attachment orders and commitment orders associated with both contempt findings in light of his inability to pay the purge amounts. In the event the court denied the motion, Beau asked that it "provide 304 (a) language *** to allow an immediate appeal of the

issues herein contained." See Ill. S. Ct. R. 304(a) (eff. Mar. 8, 2016) (authorizing appeals from final judgments as to some, but not all, claims or parties upon a special finding by the trial court). Two weeks later, on December 14, the court set the motion for a hearing on January 23, 2024, and gave Jaqueline until January 11 to file a response to the motion.

¶ 11    Although the precise circumstances are not disclosed by the record, it appears that Beau was apprehended on December 20. After learning of the situation when Beau's attorney attempted to file some kind of emergency motion, the trial court, acting *sua sponte*, entered an order that appears to be an exact copy of the November 13 attachment order (the one associated with Beau's failure to meet his ongoing financial obligations) with a new file-stamp dated December 20 and four handwritten and initialed additions or alterations, which are italicized. First, the court retitled the order as being an "*Amended* Attachment for Contempt Order." Second, the court changed the provision for an "Individual Bond" to a "*Cash* Bond set in the amount of $214,327.22." Third, the court added a notation indicating that the order was being entered "*nunc pro tunc to 11/13/23*." Finally, in addition to the new file-stamp, the court wrote "*DEC 20*" over the original file-stamp date.

¶ 12    The next morning, December 21, Beau filed an emergency motion to reduce his aggregate bond to $500,000, asserting that he was unable to pay the full purge amounts ordered by the court but that he had been able to put together $500,000 from family members "to be applied as a purge amount" if the court reduced the bond. The motion also requested that, if the court denied the relief it sought, its order include a Rule 304(a) finding.

¶ 13    When Beau was brought before the court later that day, his attorney, who had learned about the *nunc pro tunc* order at some point that morning, complained that it had been entered without notice or a motion filed by Jacqueline. The court explained that it had acted on its own initiative and "fixed [the November 13 attachment order] because it was supposed to be a cash bond, not an [individual] bond." It reiterated the point during a later exchange with Jacqueline's attorneys:

> "THE COURT: *** [I]f you want to object to a hearing on this, he gets an I bond because you did the attachment wrong. Anything else?

[FIRST COUNSEL FOR JACQUELINE]: Your Honor, it's not an I bond. It's a commitment.

THE COURT: No, it says, 'individual cash bond.' I read it. I fixed it for you yesterday.

Go ahead.

***

[SECOND COUNSEL FOR JACQUELINE]: Your Honor, there was a commitment order entered in July that required Mr. Parrillo to post 800 and something thousand dollars.

THE COURT: On the I bond.

[COUNSEL FOR BEAU]: That the second—

THE COURT: On an I bond.

[SECOND COUNSEL FOR JACQUELINE]: On an I bond.

THE COURT: You did them wrong.

[SECOND COUNSEL FOR JACQUELINE]: There are those—

THE COURT: I fixed them for you."

Counsel for Jacqueline later clarified that the court had only "fixed" the bond on the November 13 attachment order, not any of the orders associated with the first contempt finding:

"[FIRST COUNSEL FOR JACQUELINE]: I think that just for a reminder of the Court, which I'm sure you're aware of, there are two—were two contempt orders that were entered on July 17th against Mr. Parrillo, and the July 31st commitment order that you entered was a cash bond in the amount of $849,038. Thereafter, the second commitment order was entered a few months later, and that is the one that Your Honor fixed sua sponte today from what my understanding [*sic*]."

¶ 14    With respect to the request for a reduced bond, Beau's attorney noted Beau's ongoing health issues, which required him to remain in the ongoing care of a doctor, and remarked that he "would

hate to see something happen to Mr. Parrillo at [the jail] which would cause an issue for not only the county but all concerned." Jacqueline's attorneys argued that the court should "follow the commitment order[s]" it had already entered. The court decided to take the middle road:

"[THE COURT:] Here's the Court's order for today because I—as of yesterday, I recall that your concern was that Mr. Parrillo would disappear again.

The order for today is $500,000 cash. The remaining amount of, I guess, around 600—I want somebody else to do the math—is the bond—is the remaining bond for EHM. I will be putting him on electronic home monitoring. I don't need him to be cared for in—at [the jail's health-care facility]. He should be—he may be cared for at home. He will not be gone because he will be on electronic home monitoring. That's the order."

The court's written order stated as follows:

"(1) The Respondent, Beau Parrillo, shall be remanded to the custody of the Cook County Sheriff.

(2) The Respondent's bond shall be modified as follows:

a) Respondent shall have a cash bond of five hundred thousand dolla[r]s ($500,000).

b) Respondent shall have an additional cash bond in the sum of five hundred sixty three thousand three hundred sixty five dollars and sixty two cents ($563,365.62). Upon payment of the $500,000 cash bond, Respondent shall remain in the custody of the Cook County Sheriff but shall be held on electronic home monitoring until the sum of $563,365.32 cash bond is paid."

The court also entered a form order placing Beau on electronic home monitoring. The order provided that Beau should "not be placed on electronic home monitoring until he pays a cash bond

of $500,000.00" and that he would remain on electronic home monitoring "until he pays $563,365.62 cash purge amount [*sic*]" to the clerk.

¶ 15    At some point in the following days, Beau posted the $500,000 bond and was released on electronic home monitoring. On December 26, the court entered an order to release the cash posted as bond. The order recited that the court had entered two orders finding Beau in contempt and later entered commitment orders, that "[o]n December 17 [*sic*], 2023, the Honorable Court modified Beau Parrillo's purge and set the cash bond in the amount of $500,000.00," and that Beau had posted the $500,000 bond. It directed the clerk to "immediately turn over the cash bond" to Jacqueline.

¶ 16    On January 19, 2024, Beau filed a notice of appeal stating that he was appealing the court's December 20 and December 21 orders "for modification of an injunction, and any and all order(s) leading up to and included in said orders premised on the manifest errors in the rendering of said orders," under Illinois Supreme Court Rule 307(a) (eff. Nov. 1, 2017).

¶ 17                              ANALYSIS

¶ 18    On appeal, Beau challenges the trial court's December 20 order that amended the November 13 attachment order *nunc pro tunc*, the December 21 orders that authorized his release onto home confinement with electronic monitoring upon posting a $500,000 bond, and the December 26 order that ordered the clerk of the court to turn the bond over to Jacqueline.

¶ 19                         A.  Preliminary Matters

¶ 20    We start by addressing four preliminary matters.

¶ 21    First, while this appeal was pending, Jacqueline filed a motion to dismiss for want of appellate jurisdiction arguing that the December 20 and December 21 orders were not injunctive in nature and therefore not appealable under Rule 307(a). Beau filed a response contending that both orders were appealable under Rule 307(a). He reasoned that all three orders modified previous attachment orders and argued that the body-attachment orders are injunctive in nature because they compelled him to post a bond. We took the motion with the case. Additionally, we have an

independent duty to assess our own jurisdiction. *People v. Smith*, 228 Ill. 2d 95, 104 (2008). As explained below, we find that we have jurisdiction to review the December 21 orders but not the December 20 order, so the motion to dismiss is granted in part and denied in part.

¶ 22    Second, in his briefs, Beau contends that the trial court erred when it entered the December 26 order directing the clerk to pay the $500,000 bond Beau posted to Jacqueline. We lack jurisdiction to review that order because it was not specified in the notice of appeal. Our jurisdiction turns on compliance with the rules. *People v. Salem*, 2016 IL 118693, ¶ 11. Rule 303(b)(2) requires that a notice of appeal "specify the judgment or part thereof or other orders appealed from." Ill. S. Ct. R. 303(b)(2) (eff. July 1, 2017). It follows that "[a] notice of appeal confers jurisdiction on the appellate court to consider only the judgments or parts of judgments specifically identified in the notice." *Clark v. Gannett Co., Inc.*, 2018 IL App (1st) 172041, ¶ 54. Beau's notice of appeal, which was filed on January 19, 2024, stated that he was appealing from the December 20 and December 21 orders "and any and all order(s) leading up to and included in said orders." It did not indicate that he was appealing from the December 26 order, so it did not invoke our jurisdiction to review that order. As Beau did not perfect an appeal from that order, we will not consider his arguments that it was entered in error.

¶ 23    Third, the thrust of many of the arguments in Beau's brief is that he lacks the ability to pay the purge amounts ordered by the trial court. The purge amounts reflect Beau's unsatisfied obligations under the dissolution judgment. When it found Beau in contempt on July 17, 2023, the trial court expressly found that he "had, and still has, the means to comply" with those obligations and that his failure to do so was "willful and contumacious." In other words, the trial court found that Beau had the ability to pay what he owed. Because those findings were accompanied by a penalty—commitment—they were immediately appealable. Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016). Under the rules, any notice of appeal was due 30 days later, on August 16. Ill. S. Ct. R. 303(a)(1) (eff. July 1, 2017); see Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016). The time for Beau to appeal those findings has long since passed, so they are not within our scope of review in this appeal. See *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1025 (2003). To be sure,

circumstances may have changed since then. Indeed, based on the same arguments he makes in this court, Beau has filed a motion to reconsider or vacate the contempt sanctions. But that motion is still pending, so there is no order for us to review. In short, Beau's arguments that he is unable to pay the purge amounts are either untimely or premature. Either way, we will not address them in this appeal.

¶ 24    Finally, Beau's briefs contain conclusory requests for us to "enter a supervisory order to oversee the trial court's management of this case." We reject that request because, in Illinois, only the supreme court is vested with supervisory authority over other courts. Ill. Const. 1970, art. VI, § 16; *People v. Young*, 2018 IL 122598, ¶ 28 ("[T]he appellate court does not possess supervisory authority.").

¶ 25                              B.  The December 20 Order

¶ 26    We begin with the court's December 20 order. Beau characterizes it as a modification of the November 13 attachment order, but the order expressly states that it is a *nunc pro tunc* order, not a modification. The purpose of a *nunc pro tunc* order is to correct clerical errors or omissions in the record so that it accurately reflects "what was actually done before." *Wells v. State Farm Fire & Casualty Co.*, 2020 IL App (1st) 190631, ¶ 43. "In other words, a *nunc pro tunc* order allows the record to express, in writing, what the court actually intended to occur." *U.S. Bank National Ass'n v. Luckett*, 2013 IL App (1st) 113678, ¶ 27. So, on its face, the December 20 order purports to do nothing more than make a clerical correction to the November 13 attachment order to reflect that the court had actually ordered the sheriff to release Beau only if he posted a cash bond (which would require payment in full), not an individual bond (which would not). See *In re Mar. S.*, 2023 IL App (1st) 231349, ¶ 37 (stating that an oral pronouncement controls over an inconsistent written order). The record does not contain a transcript of the November 13 proceedings, so we must presume that the record would support the trial court's designation of the December 20 order as a clerical correction rather than a substantive modification. See *Ally Financial Inc v. Pira*, 2017 IL App (2d) 170213, ¶ 30 (presuming, based on absence of report of

proceedings or bystander report, that *nunc pro tunc* order was in conformity with the law and had a sufficient factual basis). That presumption is not rebutted by the trial court's remarks at the December 21 hearing that it had "fixed" the orders prepared by Jacqueline's counsel, which are consistent with the court having corrected a clerical error made by counsel when preparing the written order.

¶ 27    Accordingly, we must treat the December 20 order as being what it purported to be: a mere clerical correction to the November 13 attachment order. That being the case, we lack jurisdiction to review it. In general, we have jurisdiction to review appeals from final orders or judgments. See Ill. Const. 1970, art. VI, § 6; Ill. S. Ct. R. 301 (eff. Feb. 1, 1994). But the *nunc pro tunc* order here was not a final judgment. Consequently, we only have jurisdiction if the supreme court rules authorize interlocutory review. *EMC Mortgage Corp. v. Kemp*, 2012 IL 113419, ¶ 9. There is no supreme court rule providing for appeals from *nunc pro tunc* orders as such, but there is authority for the proposition that an appeal may be taken from a *nunc pro tunc* order if the underlying judgment or order being corrected would itself be appealable. See *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 51 (1999) (stating, in the context of an order amending a final judgment *nunc pro tunc*, that "[a] *nunc pro tunc* order may itself properly be treated as an appealable order, because it would be manifestly unfair to allow a party no avenue in which to seek appellate review of the propriety of such an order"). The November 13 attachment order, though, was not itself appealable. The rules do not specifically authorize appeals from attachment orders. See Ill. S. Ct. R. 304(b) (eff. Mar. 8, 2016) (appeals from final judgments as to some, but not all, claims or parties); R. 306(a) (eff. Oct. 1, 2020) (discretionary appeals from interlocutory orders); R. 307(a) (eff. Nov. 1, 2017) (appeals as of right from interlocutory orders). A prejudgment attachment can be appealed under Rule 304(a) if the trial court finds that there is no just reason to delay the appeal. *Revolution Portfolio, LLC v. Beale*, 341 Ill. App. 3d 1021, 1026-27 (2003). But the trial court did not make that finding here.

¶ 28    Beau argues that the attachment order was an appealable injunction under Rule 307(a)(1), but attachment orders are not injunctions. *Cozart v. Cozart*, 258 Ill. App. 3d 848, 850 (1994). "Not

every nonfinal order of a court is appealable, even if it compels a party to do or not do a particular thing." *In re a Minor*, 127 Ill. 2d 247, 261-62 (1989). Typically, an order is injunctive when it "affect[s] the relationship of the parties in their everyday activity apart from the litigation." *Id.* at 262. The November 13 body attachment, while significant for Beau's day-to-day life, had no impact on his and Jacqueline's legal relationship outside of the legal proceedings themselves. It was simply the "vehicle used to effectuate" the court's order committing Beau to the sheriff's custody until he purged his contempt for not obeying the dissolution judgment. *In re Marriage of Harnack*, 2022 IL App (1st) 210143, ¶ 75.

¶ 29    Because the attachment order was not an injunction, it was not appealable under Rule 307(a)(1), nor was it appealable under any other rule. We therefore lack jurisdiction to review the trial court's December 20 *nunc pro tunc* amendment of that order, which means we must dismiss Beau's appeal from that order. See *Lebron v. Gottlieb Memorial Hospital*, 237 Ill. 2d 217, 251-52 (2010).

¶ 30                                    C.  The December 21 Orders

¶ 31    That brings us to the December 21 orders. Taken together, the December 21 orders provided for Beau to be "remanded to the custody of the Cook County Sheriff" until Beau posted a $500,000 bond, after which Beau would be "remanded into the custody of the Cook County Department of Corrections and transferred to the supervisory authority of the Sheriff's Electronic Monitoring Program." He would then remain on electronic home monitoring "until he pa[id] $563,365.62 cash purge amount," at which point he would be "released from" it.

¶ 32    Both parties construe these as modifications to the attachment orders, but we think they are better understood as modifying the court's previous orders of commitment for contempt. As previously noted, the purpose of the body-attachment orders was to authorize the sheriff to take Beau into custody to effectuate the orders of commitment as contempt sanctions. See *Harnack*, 2022 IL App (1st) 210143, ¶ 76. Hence, the attachments ordered the sheriff to "take custody" of Beau and either "immediately bring him" before the court or "accept[] bond" as set in the order

and "require his *** appearance in court at a specified date and time." Once the sheriff had followed the court's command "to serve this writ and return it without delay," the obligations imposed by the attachment orders were discharged in full. The commitment orders, on the other hand, imposed ongoing obligations on the sheriff. They ordered the sheriff to "take and keep custody" of Beau "until he purges himself of contempt by posting" the applicable purge amount, with the July 31 commitment order (pertaining to the retirement accounts) specifying that the purge would take the form of a "cash bond."[2]

¶ 33    Unlike the attachment orders, the December 21 orders did not contemplate that the sheriff would merely apprehend Beau for the purpose of ensuring his appearance in court. Instead, like the commitment orders, the December 21 orders imposed an ongoing obligation on the sheriff to keep Beau in custody unless and until he paid the purge amounts. In substance, then, they were modifications of the trial court's previous orders of commitment for contempt, not of its attachment orders. The court's statements on the record confirm that the point of its orders was to ensure that Beau remained in a form of coercive custody that would prevent him from disappearing while permitting him, in light of his serious health problems, to be "cared for at home" rather than in jail.

¶ 34    Because the December 21 orders modified the contempt sanction by authorizing Beau's release on electronic home monitoring upon partial payment of the purge amount, we have jurisdiction to review them. See Ill. S. Ct. R. 304(b)(5) (eff. Mar. 8, 2016) (authorizing appeals from orders imposing a penalty upon a finding of contempt) see also *In re a Minor*, 127 Ill. 2d at

---

[2]  It is not clear why the two orders are different in this respect. Both orders, which were prepared by counsel for Jacqueline, indicate that they were prepared using form CCDR 0033, part of which reads as follows:

> "IT IS ORDERED THAT the Sheriff take and keep custody of [blank] until s/he purges her/himself of contempt by posting $ [blank] Cash Bond and/or [blank] or until released by process of law." Clerk of the Circuit Court of Cook County, Form CCDR 0033, Order of Commitment for Contempt (rev. Dec. 1, 2020), *available at* https://services.cookcountyclerkofcourt.org/Forms/Forms/pdf_files/CCDR0033.pdf.

The November 13, 2023 order omitted "Cash Bond and/or [blank]," which was equivalent to one line of text on the form. Despite that omission, it still bore the order code for setting a bond.

260 (looking "to the substance of the [judicial] action, not its form," to determine its appealability). We therefore deny the motion to dismiss the appeal from the December 21 orders.

¶ 35    On the merits, we find no error.[3] Beau argues that the $500,000 cash bond set in the December 21 orders failed to comply with section 12-107.5 of the Code of Civil Procedure. 735 ILCS 5/12-107.5 (West 2022). Although the bond in this case certainly exceeded the limit set out in the statute, which provides for "a recognizance bond in the sum of no more than $1,000" (*id.* § 12-107.5(d)), the statute only applies to an "order of body attachment or other civil order for the incarceration or detention of a natural person respondent to answer for a charge of indirect civil contempt." *Id.* § 12-107.5(a). Once a contempt order has been entered, section 12-107.5 no longer governs. *Harnack*, 2022 IL App (1st) 210143, ¶ 72. Here, Beau had already been found in contempt. The commitment orders (including the December 21 modifications) were entered as contempt sanctions, not as a way to get Beau before the court for the contempt hearing, so they did not need to comply with section 12-107.5.

¶ 36    Beau also argues that the trial court violated section 713 of the Illinois Marriage and Dissolution of Marriage Act. 750 ILCS 5/713 (West 2022). His argument is somewhat opaque, but there is no need for us to try to unpack it. By its express terms, section 713 only applies to body-attachment orders. *Id.* § 713(a). The December 21 orders modified the orders of commitment, not the body attachments, so section 713 has no role to play.

¶ 37    Finally, to the extent that Beau contends that the December 21 orders improperly increased, without a hearing, the amount he would have to pay to purge his contempt, we disagree. Whatever the attachment orders may have said, the original commitment orders required Beau to pay the

---

[3]    Jacqueline argues that Beau forfeited these contentions of error by not raising them in the trial court. See *Dubey v. Public Storage, Inc.*, 395 Ill. App. 3d 342 at 350-51 (2009) (describing forfeiture rule). Because we find the arguments lack merit, it is unnecessary for us to consider whether Beau forfeited them or whether the interests of justice would require us to reach them despite forfeiture. *Cf. Door Properties, LLC v. Nahlawi*, 2024 IL App (1st) 230012, ¶¶ 52-53 (looking past forfeiture to address contemnor's claim that he had been wrongly and indefinitely deprived of his freedom).

purge amounts in full. The December 21 orders did not change the purge amount. They only gave Beau the option of securing his release to electronic home monitoring upon partial payment.

¶ 38                                    CONCLUSION

¶ 39    We lack jurisdiction to review the trial court's December 20, 2023 *nunc pro tunc* order, so we dismiss the appeal from that order. We find no error in the trial court's December 21, 2023 orders modifying the contempt sanction, so those orders are affirmed. And because the trial court's December 26, 2023 order releasing the bond was not specified in the notice of appeal, we lack jurisdiction to review it.

¶ 40    Affirmed in part; appeal dismissed in part.